[No. S139133. July 31, 2008.]

LES G. MIKLOSY et al., Plaintiffs and Appellants, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al.,
Defendants and Respondents.

880

**COUNSEL**

Gwilliam, Ivary, Chiosso, Cavalli & Brewer, J. Gary Gwilliam; Law Offices of Jan C. Nielsen and Jan C. Nielsen for Plaintiffs and Appellants.

Loraine V. Johnson as Amicus Curiae on behalf of Plaintiffs and Appellants.

Kerr & Wagstaffe, Michael von Loewenfeldt and Michael K. Ng for Project on Government Oversight as Amicus Curiae on behalf of Plaintiffs and Appellants.

Joel Golden for Dr. Larry M. Brand as Amicus Curiae on behalf of Plaintiffs and Appellants.

Ross, Dixon & Bell and Jon R. Williams for Whistlebusters.org as Amicus Curiae on behalf of Plaintiffs and Appellants.

Loulena Miles for Tri-Valley CAREs as Amicus Curiae on behalf of Plaintiffs and Appellants.

Beeson, Tayer & Bodine and Dale L. Brodsky for Society of Professionals, Scientists, and Engineers, Local 11 and University Professional and Technical Employees, CWA Local 9119, AFL-CIO as Amici Curiae on behalf of Plaintiffs and Appellants.

Reed Smith, Paul D. Fogel, Dennis Peter Maio; Melissa M. Allain, Janet G. Tulk, Gabriela B. Odell, Max A. Creamer, Jeffrey A. Blair; Hanson Bridgett Marcus Vlahos & Rudy, Patrick M. Glenn, Sandra L. Rappaport and Sarah D. Mott for Defendants and Respondents.

## OPINION

**KENNARD, J.**—The California Whistleblower Protection Act (Gov. Code, § 8547 et seq.)[1] (hereafter the Whistleblower Act or the Act) prohibits retaliation against state employees who "report waste, fraud, abuse of authority, violation of law, or threat to public health" (§ 8547.1). The Act authorizes "an action for damages" to redress acts of retaliation. (§§ 8547.8, subd. (c), 8547.10, subd. (c), 8547.12, subd. (c).) But in the case of retaliation against a University of California employee, the Act provides that "any action for damages shall *not* be available . . . *unless the injured party has first filed a complaint with the [designated] university officer . . . , and the university has failed to reach a decision regarding that complaint within the time limits established for that purpose by the regents.*" (§ 8547.10, subd. (c), italics added.) We conclude, as did the Court of Appeal, that this statutory language means what it says, precluding a damages action when, as here, the University of California has timely decided a retaliation complaint.

---

[1] Unless otherwise noted, all statutory citations are to the Government Code.

**I**

Because this case comes before us on appeal from a judgment sustaining a demurrer, we assume the truth of the facts alleged in the complaint and the reasonable inferences that may be drawn from those facts. (See, e.g., *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 810 [27 Cal.Rptr.3d 661, 110 P.3d 914]; *Coleman v. Gulf Ins. Group* (1986) 41 Cal.3d 782, 789, fn. 3 [226 Cal.Rptr. 90, 718 P.2d 77]; *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

Plaintiffs Les G. Miklosy and Luciana Messina are computer scientists who, in February 2003, were employed by the Regents of the University of California (hereafter the University of California or the University), filling positions at the Lawrence Livermore National Laboratory (the Laboratory). Plaintiffs worked in the National Ignition Facility on a project designed to determine the safety and reliability of the nation's nuclear weapons stockpile. One method of evaluating the safety and reliability of these weapons involved shooting laser beams at "nuclear material" placed in a "Target Chamber."

As their work proceeded, plaintiffs "identified problems with the . . . project, including, *inter alia*, potential collisions by large million dollar robotic 'positioners' within the [Target Chamber] . . . , the delivery of unusable and untested control software, a lack of defined engineering and operational processes . . . , and inadequate . . . control operator training . . . ." Plaintiffs repeatedly expressed their concerns to management, both orally and in writing, enumerating specific mechanical problems with the positioners and the robotic controls.

On Friday, February 28, 2003, defendants Kim Minuzzo, Larry Lagin, and Jerry Krammen, who were supervisory employees of the Laboratory, fired Miklosy. As Miklosy was leaving the premises, he heard Minuzzo tell Krammen: "Messina is next." Believing her performance was comparable to that of Miklosy, Messina submitted a letter of resignation. Lagin and Minuzzo asked Messina to reconsider her resignation over the weekend, which she agreed to do. When Messina returned to her office after this meeting, she found her computer disconnected.

On Monday, March 3, 2003, Messina inquired about transferring to a different position at the Laboratory, but Minuzzo telephoned her the next day and directed her to return to the National Ignition Facility. After that conversation had ended, but before the telephone call was disconnected, Messina overheard Minuzzo tell another employee that he intended to fire Messina. Messina resigned as of March 7, 2003.

On August 16, 2003, plaintiffs filed complaints with the University under section 8547.10, subdivision (a), of the Whistleblower Act. The Laboratory's Personnel Policies and Procedures Manual requires the director of the Laboratory to appoint a "Retaliation Complaint Officer" (RCO) to investigate a complaint of whistleblower retaliation. The RCO must prepare findings within 90 days; once the findings are submitted, the director of the Laboratory must reach a decision on the complaint within 15 days. The director's decision may include "appropriate relief for the complainant" and may be appealed to the president of the University. This procedure is generally comparable to the procedure the State Personnel Board follows when evaluating similar complaints by state agency employees. (See Cal. Code Regs., tit. 2, § 56.3, subd. (a) [appointment of an investigator]; *id.*, §§ 56.3, subd. (b), 56.5, subd. (a) [issuance of findings based on the investigator's report]; *id.*, § 56.5, subd. (d) [appeal to the five-member State Personnel Board]; *id.*, §§ 56.2, subd. (c), 56.5, subd. (d), 56.8 [no right to a formal hearing at any point in the process, though one may be granted at the board's discretion].)

In regard to plaintiffs' complaints, John S. Hunt, a Laboratory employee, acted as the RCO. The Laboratory has a staff that exceeds 8,000, and there is no indication in the complaint that Hunt was in any way involved in the direct management of the National Ignition Facility or had any personal connection with the dispute. Hunt interviewed 23 witnesses and submitted his findings to Robert Perko, the staff relations officer, on November 4, 2003. Hunt found that Laboratory management had not reacted adversely to plaintiffs' reports of problems at the National Ignition Facility, instead treating those reports as a normal part of project development. Hunt found no support for the assertion that management had retaliated against either Miklosy or Messina. Hunt determined instead that the Laboratory had fired Miklosy for unsatisfactory work performance and that the Laboratory had never intended to fire Messina and actually had tried to convince her to stay. The Laboratory director adopted Hunt's findings and conclusions on November 17, 2003, and plaintiffs concede that the Laboratory reached its decision within the time limits specified in its internal policies. Plaintiffs did not appeal the director's decision to the president of the University, and therefore the decision became the University's final resolution of the matter.

On February 10, 2004, plaintiffs filed a damages action in superior court against the University and three supervisory employees—Minuzzo, Lagin, and Krammen. The complaint alleged four causes of action: (1) unlawful retaliation in violation of the Whistleblower Act (both plaintiffs); (2) wrongful termination in violation of public policy (Miklosy); (3) wrongful constructive termination in violation of public policy (Messina); and (4) intentional infliction of emotional distress (both plaintiffs). The complaint sought compensatory damages, punitive damages, and attorney fees.

The trial court sustained defendants' demurrer with leave to amend and, when plaintiffs filed an amended complaint, defendants again demurred. The trial court then sustained defendants' demurrer without leave to amend, and dismissed plaintiffs' action. The Court of Appeal affirmed, holding that plaintiffs had no viable claim under the Whistleblower Act because the University timely resolved their complaints, and further holding that plaintiffs' common law claims were statutorily barred. We granted plaintiffs' petition for review.

## II

In 1993, the Legislature enacted the Whistleblower Act, codifying it as sections 8547 through 8547.11. (Stats. 1993, ch. 12, § 8, pp. 96–101.) At that time, the Act was entitled the "Reporting of Improper Governmental Activities Act," and its stated purpose was to encourage the disclosure of "improper governmental activities," which the Act generally defined as activities that were unlawful or economically wasteful, or that involved gross misconduct or incompetence. (*Id.* at pp. 96–97.) The Act was not wholly new; rather, it built on existing provisions of the Government Code, in some cases renumbering those provisions without changing their substantive content. In 1999, the Legislature extended the Act to cover disclosures of health and safety problems (Stats. 1999, ch. 673, §§ 4, 6, 7), giving the Act its present name (*id.*, § 1) and declaring, as its purpose, "that state employees should be free to report waste, fraud, abuse of authority, violation of law, or threat to public health without fear of retribution" (*id.*, § 3).

Since its inception, the Act has dealt with employees of the state and the University in separate provisions, indicating the Legislature's awareness of the University's unique constitutional status and the concomitant need for special provisions to govern whistleblowing at the University. For example, section 8547.3 imposes liability on state employees or officeholders who use their authority to interfere with the disclosure rights conferred by the Act, and section 8547.11 imposes similar liability on employees and officers of the University. Likewise, section 8547.8 protects state employees against whistleblower retaliation, and section 8547.10 confers similar protections on employees and officers of the University.

Regarding whistleblower retaliation, section 8547.8, subdivision (c), imposes liability "in an action for damages" on "any person who intentionally engages in acts of reprisal, retaliation, threats, coercion, or similar acts against a state employee" for disclosing improper governmental activities or unsafe conditions. But, as enacted, section 8547.8, subdivision (c), included the following caveat: "However, any action for damages shall not be available . . . unless the injured party has first filed a complaint with the State

Personnel Board . . . , *and the board has failed to reach a decision* regarding any hearing conducted pursuant to Section 19683." (Stats. 1993, ch. 12, § 8, p. 99, italics added.) Thus, as enacted, section 8547.8, subdivision (c), appears to have limited damages actions by state employees to cases in which the State Personnel Board has failed to reach a decision, essentially making the damages action a secondary alternative, contingent on the malfunctioning of the primary alternative, rather than an additional source of relief.

Section 8547.10, subdivision (c), imposes similar liability for retaliation against employees or officers of the University, and it includes a similar caveat, providing: "However, any action for damages shall not be available . . . unless the injured party has first filed a complaint with the [designated] university officer . . . , *and the university has failed to reach a decision* regarding that complaint within the time limits established for that purpose by the regents." (Italics added.) This provision on its face appears to make the damages action an alternative remedy, available only if the University fails to act.

In 1994, the Legislature added section 8547.12 to the Act, extending whistleblower protections to employees and officers of the California State University. (Stats. 1994, ch. 834, § 1, pp. 4117–4118.) Section 8547.12, subdivision (c), authorizes a damages action for whistleblower retaliation and includes the same caveat as sections 8547.8 (governing state employees) and 8547.10 (governing University of California employees), but section 8547.12, subdivision (c), adds a sentence that does *not* appear in the other provisions. Specifically, section 8547.12, subdivision (c), provides: "However, any action for damages shall not be available . . . unless the injured party has first filed a complaint with the [designated] university officer . . . , and the university has failed to reach a decision regarding that complaint within the time limits established for that purpose by the trustees. *Nothing in this section is intended to prohibit the injured party from seeking a remedy if the university has not satisfactorily addressed the complaint within 18 months.*" (Italics added.) The addition of the last sentence, and specifically the modifier "satisfactorily," raises the possibility that a court might find the state university's decision unsatisfactory (though timely) and on that basis permit a damages action. (See *Ohton v. Board of Trustees of the California State University* (2007) 148 Cal.App.4th 749, 765 [56 Cal.Rptr.3d 111].) Here, we need only construe section 8547.10, subdivision (c), and therefore we express no view on the substantive content, if any, of the term "satisfactorily" in section 8547.12, subdivision (c). Above, we have set forth the text of section 8547.8, subdivision (c), and section 8547.12, subdivision (c), for the purpose of comparison with section 8547.10, subdivision (c), the provision at issue here.

In 2001, the Legislature amended section 8547.8, subdivision (c), governing state employees, to expressly permit a damages suit even when the State

Personnel Board has issued timely findings. (See Stats. 2001, ch. 883, § 3.) As amended, the caveat in section 8547.8, subdivision (c), now provides: "However, any action for damages shall not be available . . . unless the injured party has first filed a complaint with the State Personnel Board . . . , and the board *has issued, or failed to issue, findings* . . . ." (Italics added.) Arguably, this amendment changed the provision from an alternative remedy (available only when the administrative remedy fails to function) to a general remedy (available in all cases, though requiring the employee to first exhaust administrative remedies).[2] The Legislature, however, did not enact a comparable amendment to section 8547.10, subdivision (c), pertaining to employees of the University of California.

■ Therefore, as amended, the Whistleblower Act appears at first blush to distinguish three groups of public employees: (1) a state employee may bring a damages action alleging whistleblower retaliation after first seeking relief from the State Personnel Board (§ 8547.8, subd. (c));[3] (2) a California State University employee may seek "a remedy" if the state university's administrative remedy fails to proceed to a timely decision or does not "satisfactorily address[]" the employee's complaint within 18 months (§ 8547.12, subd. (c)); and (3) a University of California employee may bring a damages action only if the University's administrative remedy fails to result in a timely decision (§ 8547.10, subd. (c))—if the University reaches a timely decision in its own favor, the employee has no cause of action for damages.

## III

■ Plaintiffs argue that their claims against the University of California for damages under the Whistleblower Act remain viable notwithstanding the Laboratory director's timely decision rejecting those claims on the merits.

---

[2] As discussed below, plaintiffs argue that the amendment was intended merely as a clarification of existing law and that section 8547.8, subdivision (c), was never anything other than an exhaustion requirement. The phrase "exhaustion requirement" is perhaps inappropriate because it suggests that an employee who has first pursued an administrative remedy before the State Personnel Board may proceed with a damages action *regardless of the State Personnel Board's decision.* We express no view as to whether section 8547.8, subdivision (c), is properly characterized in those terms, or whether a damages action is available only after a *favorable* decision from the State Personnel Board. We also express no view as to whether an employee must seek judicial review of an *unfavorable* decision from the State Personnel Board before bringing a damages action, and the collateral estoppel effect of the resulting judicial decision. These questions are not at issue here and are now pending before us in other cases.

[3] As noted in footnote 2, *ante,* whether the state employee must receive a *favorable* decision from the State Personnel Board before bringing a damages action is unclear. Also unclear is whether the employee must seek judicial review of an unfavorable decision from the State Personnel Board. These questions are not at issue here and are now pending before us in other cases.

This argument requires us to interpret the terms of section 8547.10, subdivision (c), which governs retaliation against University of California employees. Our task is a familiar one. "We apply well-established principles of statutory construction in seeking 'to determine the Legislature's intent in enacting the statute " 'so that we may adopt the construction that best effectuates the purpose of the law.' " ' (*Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192, 199 [46 Cal.Rptr.3d 41, 138 P.3d 193]; see *People v. King* (2006) 38 Cal.4th 617, 622 [42 Cal.Rptr.3d 743, 133 P.3d 636]; *Fitch v. Select Products Co.* (2005) 36 Cal.4th 812, 817–818 [31 Cal.Rptr.3d 591, 115 P.3d 1233].) We begin with the statutory language because it is generally the most reliable indication of legislative intent. (*City of Burbank v. State Water Resources Control Bd.* (2005) 35 Cal.4th 613, 625 [26 Cal.Rptr.3d 304, 108 P.3d 862].) If the statutory language is unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute controls. (*People v. Hudson* (2006) 38 Cal.4th 1002, 1009 [44 Cal.Rptr.3d 632, 136 P.3d 168].)" (*Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 211 [64 Cal.Rptr.3d 210, 164 P.3d 630].) We consider extrinsic aids, such as legislative history, only if the statutory language is reasonably subject to multiple interpretations. (*People v. King, supra,* 38 Cal.4th at p. 622.)

■ The plain language of section 8547.10, subdivision (c), states that a damages action "shall not be available . . . unless . . . the university has failed to reach a [timely] decision . . . ." The word "unless" when used as a conjunction means "except on the condition that." (Webster's 9th New Collegiate Dict. (1988) p. 1292.) Thus, as a matter of established usage, the "unless" clause states conditions that must be satisfied *in every case*; if the conditions are not satisfied, then the damages action "shall not be available." Moreover, the two conditions set forth in section 8547.10, subdivision (c), are clear: (1) "the injured party" must have "filed a complaint with the [designated] university officer," and (2) "the university" must have "failed to reach a decision regarding that complaint within the time limits established for that purpose by the regents." If, as here, the University has reached a timely decision in its own favor, then it has not "failed to reach a decision," the conditions stated in section 8547.10, subdivision (c), have not been met, the "unless" clause is not satisfied, and "an[] action for damages shall not be available." (§ 8547.10, subd. (c).)

■ In short, the function of section 8547.10, subdivision (c), appears to be limited to enforcing the University's internal mechanism for resolving disputes by providing an alternative secondary remedy that is available only when the University's internal mechanism fails to operate. As long as the University completes in a timely fashion its own internal dispute-resolution process, the alternative remedy of a damages action in state court is unavailable. If, however, the University's dispute-resolution process fails to function,

the injured party is protected by the statutory alternative of bringing a damages action in state court, which has the potential to be much more costly to the University.

█ This interpretation is the only one that fits comfortably with the plain meaning of section 8547.10, subdivision (c), and it is also the interpretation we have given the statute in our prior decisions, albeit in dictum. Thus, in *Campbell v. Regents of the University of California* (2005) 35 Cal.4th 311, 327 [25 Cal.Rptr.3d 320, 106 P.3d 976] (*Campbell*), we paraphrased the statute as follows: "[T]he employee may not proceed with a court action against the university unless that institution has failed to reach an administrative decision on the action within specified time limits. (§ 8547.10, subd. (c).) . . . If, by contrast, the university has reached a decision on the administrative action, the statute does not authorize any statutory damages action."

█ Moreover, this interpretation is reasonable in light of the unique constitutional status of the University of California. As we explained in *Campbell*: "The California Constitution establishes the Regents [i.e., the University of California] as a 'public trust . . . with full powers of organization and government.' (Cal. Const., art. IX, § 9, subd. (a).) We have observed that 'Article IX, section 9, grants the [R]egents broad powers to organize and govern the university and limits the Legislature's power to regulate either the university or the [R]egents. This contrasts with the comprehensive power of regulation the Legislature possesses over other state agencies.' (*San Francisco Labor Council v. Regents of University of California* (1980) 26 Cal.3d 785, 788 [163 Cal.Rptr. 460, 608 P.2d 277] . . . .) This grant of constitutional power to the University includes the grant of quasi-judicial powers, a view that is generally accepted in our jurisprudence. (*Ishimatsu v. Regents of University of California* (1968) 266 Cal.App.2d 854, 864 [72 Cal.Rptr. 756]; see also *Apte v. Regents of University of California* (1988) 198 Cal.App.3d 1084, 1091 [244 Cal.Rptr. 312].) [¶] The Regents may also exercise quasi-legislative powers, subject to legislative regulation. Indeed, 'policies established by the Regents as matters of internal regulation may enjoy a status equivalent to that of state statutes.' (*Regents of University of California v. City of Santa Monica* (1978) 77 Cal.App.3d 130, 135 [143 Cal.Rptr. 276], citing *Hamilton v. Regents* (1934) 293 U.S. 245 [79 L.Ed. 343, 55 S.Ct. 197].) The authority granted the Regents includes 'full powers of organization and government, subject only to such legislative control as may be necessary to insure compliance with the terms of the endowment of the University and the security of its funds.' (*Goldberg v. Regents of University of California* (1967) 248 Cal.App.2d 867, 874 [57 Cal.Rptr. 463].) Thus, '[t]he Regents have been characterized as "a branch of the state itself" [citation] or "a statewide administrative agency" [citation]' (*Regents of University of California v. City of Santa Monica, supra*, 77 Cal.App.3d at p. 135), and '[i]t is apparent that

the Regents as a constitutionally created arm of the state have virtual autonomy in self-governance' (*ibid.*)." (*Campbell, supra,* 35 Cal.4th at pp. 320–321.)

■ In short, the University functions in some ways like an independent sovereign, retaining a degree of control over the terms and scope of its own liability. Given the University's unique constitutional status, it is not surprising that the Legislature would take a deferential approach when authorizing damages actions against the University. Thus, section 8547.10, subdivision (c), gives the University the flexibility appropriate to a semiautonomous branch of the state government to create its own mechanism for resolving whistleblower retaliation claims, but it also provides an alternative remedy when the University's remedy is withheld. A damages action in state court may afford complainants a more favorable forum because the fact finder in state court is not a University employee, and because other procedural protections apply, such as evidentiary rules, testimony under penalty of perjury, and cross-examination of witnesses. But the appropriateness of granting these procedural protections to University whistleblowers is a matter of policy that is not for this court to determine.[4]

The Legislature has encouraged the University to establish its own neutral procedure for resolving whistleblower retaliation claims brought by University employees or officers and has stated that if the University follows its own procedure and reaches a timely decision, a damages action cannot be brought against it in state court. (§ 8547.10, subd. (c).) This legislative approach does not leave the University's decision completely unreviewable—an action for a writ of mandate provides limited review[5]—but it does give considerable leeway to the University to operate with relative autonomy within the state governmental system.

If the University fails to follow its own procedures in a timely manner, the Legislature has provided injured parties the protection of an alternative remedy in the form of a state court damages action. This alternative remedy is not an additional source of relief over and above whatever the University awards or fails to award; rather, it is a backup remedy available only when the University has failed to timely resolve the whistleblower complaint.

Plaintiffs direct our attention to the legislative history of the Whistleblower Act. Although we find no ambiguity in the statutory language of section

---

[4] We do not mean to suggest that there are no limits that apply in this context. The University must provide a viable mechanism for fairly evaluating whistleblower retaliation complaints, and the University's consideration of a complaint cannot be so perfunctory or arbitrary as to violate the due process guarantee of the state or federal Constitutions. Plaintiffs here, however, do not assert a due process violation.

[5] Plaintiffs here did not file a mandate action challenging the University's decision.

8547.10, subdivision (c), and therefore no reason to consult the legislative history, the legislative history actually supports our conclusion.

The statutory language that now appears in sections 8547.8 (governing state employees) and 8547.10 (governing University of California employees) actually predates the 1993 enactment of the Reporting of Improper Governmental Activities Act, having its roots in two predecessor statutes— former sections 10548 (state employees) and 10550 (University of California employees). Former section 10548 was enacted in 1986 and looked very much like section 8547.8, as enacted in 1993. Specifically, subdivision (c) of former section 10548 authorized a damages action for whistleblower retaliation against state employees but added the caveat that "any action for damages shall not be available to the injured party unless the injured party has first filed a complaint with the State Personnel Board . . . , and the board has failed to reach a decision regarding any hearing conducted pursuant to Section 19683." (Stats. 1986, ch. 353, § 4, p. 1511.) This caveat is, of course, identical to the caveat contained in section 8547.8, subdivision (c), as enacted in 1993.

Early drafts of the 1986 legislation authorized a damages action for whistleblower retaliation *but did not include the caveat*. The Department of Personnel Administration (DPA) objected to those versions, expressing among other things the following concern: "This measure would seemingly permit an employe[e] to have his or her case investigated and heard by the [State Personnel Board] and then, if the findings and ruling are not to the employee's liking, to file with the court for a new trial. This is a departure from current procedure which permits the court to simply determine whether the Board decision (for or against an employee) is supported by substantial evidence in the existing record. No new court trial is held." (Dept. of Personnel Admin., analysis of Assem. Bill No. 1916 (1985–1986 Reg. Sess.) Jan. 31, 1986, p. 2.) In other words, the DPA criticized the early versions of the bill *precisely because it made the proceeding before the State Personnel Board into a mere exhaustion requirement*. The DPA's analysis further noted that this issue had "been discussed at length with the author's staff" and that staff had "indicated a willingness to take amendments." (*Id.*, p. 1.)

Less than six weeks after the DPA issued this analysis, the bill was revised. (Assem. Bill No. 1916 (1985–1986 Reg. Sess.) as amended Mar. 10, 1986, § 4, pp. 7–8.) Among other things, this revision added the caveat restricting the availability of a damages action: "However, any action for damages shall not be available to the injured party unless the State Personnel Board has failed to reach a decision regarding any hearing conducted pursuant to Section 19683." (*Id.*, p. 8.) It appears that this caveat was added specifically to address the DPA's criticism that the damages action should not give complaining state employees a second bite at the apple after losing before the

State Personnel Board. Therefore, at least as of 1986, the Legislature expressly did *not* intend the State Personnel Board proceeding to be a mere exhaustion requirement. Rather, it expressly sought to restrict damages actions to those cases in which the State Personnel Board failed to reach a timely decision; in all other cases, the State Personnel Board proceeding was the employee's exclusive remedy, subject only to substantial evidence review in the courts. Notably, the DPA prepared a flowchart of the amended measure indicating only two possibilities for proceeding to court after bringing a complaint before the State Personnel Board: "1. For damages *if no timely SPB decision* [¶] or [¶] 2. For review of SPB decision on merits." (Italics added.) This flowchart was attached to, and referred to in, a bill analysis by a Senate committee, indicating that it came to the attention of the Legislature at least at the committee level. (Sen. Com. on Public Employment & Retirement, Analysis of Assem. Bill No. 1916 (1985–1986 Reg. Sess.) as amended May 12, 1986, p. 2 & attachment.)

Two years later, the Legislature enacted former section 10550, addressing whistleblower retaliation against University of California employees. In language identical to that currently found in section 8547.10's subdivision (c), former section 10550's subdivision (c) provided: "However, any action for damages *shall not be available* . . . unless the injured party has first filed a complaint with the [designated] university officer . . . , and the university has failed to reach a decision regarding that complaint within the time limits established for that purpose by the regents." (Stats. 1988, ch. 1385, § 3, p. 4669.) The Legislature appears to have adapted this language directly from former section 10548, subdivision (c), which pertained to whistleblower retaliation against state employees. It follows, therefore, that the Legislature likewise did *not* intend the University's internal proceeding to be a mere exhaustion requirement. Rather, it expressly sought to restrict damages actions to those cases in which the University failed to reach a timely decision on the complaint; in all other cases, the University proceeding was to be the employee's exclusive remedy.

In describing this new statute governing University employees, the Legislative Counsel's Digest first summarizes the effect of former section 10548, which governed state employees: "Under existing law, a state employee . . . who files a written complaint alleging acts of reprisal or intimidation due to disclosure of improper governmental activities may file a copy of the complaint with the State Personnel Board . . . . Existing law provides that *failure* of the board to reach a decision on the complaint, as specified, *is a condition precedent to filing a civil action for damages.*" (Legis. Counsel's Dig., Assem. Bill No. 2765 (1987–1988 Reg. Sess.) 4 Stats. 1988, Summary Dig., p. 475, italics added.) This summary confirms our reading of former section 10548: a damages action was available *only* when the State Personnel Board failed to reach a timely decision. The Legislative Counsel's Digest

next explains the impact of the new statute (that is, former § 10550): "This bill would add provisions, applicable exclusively to University of California employees, . . . *similar to the provisions administered by the State Personnel Board, as described above*, except the Regents of the University of California would designate an officer to whom complaints could be filed . . . *and the regents would administer these provisions.*" (Legis. Counsel's Dig., *supra*, p. 475, italics added.) This description indicates that the Legislature both understood and intended that a damages action against the University would be available only when the University failed to reach a timely decision. It also indicates that the Legislature intended the University to have autonomy in administering this process. Nothing suggests that the Legislature had a different intent in 1993 when it repealed former sections 10548 and 10550 (Stats. 1993, ch. 12, § 16, p. 101), and included substantially identical language in sections 8547.8 and 8547.10 (Stats. 1993, ch. 12, § 8, pp. 98–100).

This interpretation of the Legislature's intent is confirmed by later amendments to section 8547.8. As noted, sections 8547.8, subdivision (c), and 8547.10, subdivision (c), originally included parallel language limiting the damages remedy to situations in which either the State Personnel Board or the University, as the case may be, failed to reach a timely decision. In 2001, however, the Legislature enacted Senate Bill No. 413 (2001–2002 Reg. Sess.) (Senate Bill 413), amending section 8547.8, subdivision (c), to allow state employees to file a damages action if the State Personnel Board "has issued, or failed to issue, findings," thereby arguably making the provision into a mere exhaustion requirement. As amended, a final decision at the administrative level (or the failure of the administrative agency to reach a timely decision) clears the way for the state employee to file a civil damages action. (But see fn. 2, *ante*.)

The Legislative Counsel's Digest for Senate Bill 413 explained the effect of the bill as follows: "[Existing law] provides that any action for civil damages is only available to an injured party who has first filed a complaint with the State Personnel Board and the board has failed to reach a decision pursuant to specified procedures. [¶] . . . This bill would . . . provide *instead* that civil damages are available to an injured party only if the State Personnel Board *has issued, or failed to issue, findings* pursuant to the specified procedures." (Legis. Counsel's Dig., Sen. Bill No. 413 (2001–2002 Reg. Sess.) as chaptered Oct. 14, 2001, p. 1, italics added.) Then, *in a new paragraph*, the digest adds: "The bill would specify that its provisions shall apply to the California State University and the University of California." (*Ibid.*) Plaintiffs point to the latter sentence as indicative of a legislative intent to amend not just section 8547.8, but also sections 8547.10 and 8547.12,

making the requirement of administrative proceedings (which is common to all three sections) into mere exhaustion requirements in all three cases. We disagree.

The first part of the above quoted excerpt discusses the law as it was before enactment of Senate Bill 413. In other words, it discusses the statutory language that constituted the *preamendment* version of section 8547.8, subdivision (c)—language that *remains* in section 8547.10, subdivision (c). Thus, the Legislative Counsel's discussion—stating that a damages action "is only available" when "the board has failed to reach a decision"—actually supports defendants' view here that a damages action against the University is precluded so long as the internal administrative process reaches a timely decision, even one unfavorable to the employee. Moreover, by using the phrase "This bill would . . . provide *instead*" (italics added), the Legislative Counsel's Digest makes clear that the Legislature intended to *change* existing law, not merely to *explain* existing law. Therefore, plaintiffs' argument would require us to adopt the following implausible line of reasoning: When two parallel statutes use nearly identical language, and when the Legislature amends one but not the other, and when the amendment does not merely clarify existing law but actually changes the law, we should nevertheless continue to give the two statutes the same meaning, treating them as if the Legislature had actually amended both, and we should do so because the Legislative Counsel's Digest tells us that the bill will so "specify," though *the actual text of the bill does not so specify.* We reject this reasoning, relying instead on the text of the bill, which amends section 8547.8, subdivision (c), but not section 8547.10, subdivision (c).

Moreover, the sentence from the Legislative Counsel's Digest on which plaintiffs rely can be readily explained in a way that does not give it the substantive significance plaintiffs wish it to bear. When first introduced, Senate Bill 413 was limited to adding several new sections to the Government Code (see § 8548 et seq.) concerning the dissemination of information about the Whistleblower Act. (Sen. Bill 413, as introduced Feb. 21, 2001, §§ 1–2, pp. 1–4.) Later, provisions were added amending the Whistleblower Act. (See Sen. Bill 413, as amended Mar. 26, 2001, §§ 2, 4, 5, 6, pp. 3–4, 6–10; *id.*, as amended June 14, 2001, §§ 3, 5, 6, pp. 4, 8–9; *id.*, as amended July 11, 2001, § 8, p. 12.) The specific provision we are considering here (authorizing a damages action under section 8547.8, subdivision (c), when "the State Personnel Board has issued, or failed to issue, findings") was a relatively late addition to the bill. (See Sen. Bill 413, as amended Aug. 20, 2001, § 3, p. 5.) The early versions of the Legislative Counsel's Digest included the same sentence plaintiffs now highlight—that "[t]he bill would specify that its provisions shall apply to the California State University and the University of California" (see, e.g., Legis. Counsel's Dig., Sen. Bill No. 413 (2001–2002 Reg. Sess.) as amended Mar. 26, 2001, p. 2; *id.*, as

amended June 14, 2001, p. 2; *id.*, as amended July 11, 2001, p. 2; cf. *id.*, as introduced Feb. 21, 2001, p. 1); in the digest's early versions, however, this sentence necessarily referred to *other* changes Senate Bill 413 would effect, not the specific change to section 8547.8, subdivision (c), at issue here, because the change at issue here was not then a part of the bill.

When the Assembly amended Senate Bill 413 to add the specific change to section 8547.8, subdivision (c), at issue here, the Legislative Counsel revised the digest for the bill to describe this new provision. (Legis. Counsel's Dig., Sen. Bill No. 413 (2001–2002 Reg. Sess.) as amended Aug. 20, 2001, pp. 1–2.) Significantly, this new bit of descriptive material was inserted at the end of the paragraph immediately preceding the sentence on which plaintiffs are now relying, giving rise to the confusing circumstance that the sentence can be read as referring to the new provision, though the actual text of the bill makes clear the opposite is true. (*Ibid.*) Nevertheless, the fact that the sentence remains set off in its own separate paragraph tends to disassociate it from the new descriptive material and to associate it more generally with the other provisions of the bill (which, by their terms, apply to the University).

Plaintiffs further rely on a dialogue that took place during a hearing, held on February 28, 2001, before the Senate Select Committee on Governmental Oversight. At the hearing, an attorney for the California State Employees Association complained that the original language of section 8547.8, subdivision (c), governing state employees, could be read to preclude a damages action whenever the agency has issued a timely decision, even a decision in its own favor—which of course is exactly what defendants now argue about section 8547.10, subdivision (c), governing University employees. The attorney said: "But I think if you read the plain language, it makes it sound that if the Board has reached a decision . . . [n]ot to act, then that's it. That you can only bring a complaint if the State Personnel Board has failed to act. *I think it reads as a bar to civil litigation*, but I think it was meant as an exhaustion requirement." (Italics added.) The committee chair then asked: "So shall we clarify that?" Plaintiffs argue that to "clarify" statutory language means to explain its already existing meaning, not to change the law, and therefore they assert that section 8547.8, subdivision (c)—and, by parallel reasoning, section 8547.10, subdivision (c)—was *always* intended to be a mere exhaustion requirement, allowing the employee to file a damages action once the agency has reached its decision, regardless of what the decision might be.

This brief dialogue, however, cannot support the substantive conclusions plaintiffs draw from it. First, the passing comment of a committee chair at a legislative hearing hardly establishes the intent of the Legislature as a whole. Moreover, the statement of the attorney for the California State Employees Association actually supports *defendants'* argument that the original language

of section 8547.8, subdivision (c)—language that remains in section 8547.10, subdivision (c)—is best read to *preclude* a damages action. As the attorney pointed out, "if you read the *plain language*, . . . it reads as a *bar to civil litigation*." (Italics added.) Therefore, the committee chair's use of the word "clarify" is not strong evidence that the committee intended to explain existing law rather than to change the law. This conclusion finds further support in the legislative history already discussed, indicating that the predecessor statute to section 8547.8—former section 10548—was drafted to preclude the precise interpretation plaintiffs are now advocating. Therefore, considered in this context, the word "clarify" meant only that the committee would address the issue.

 Moreover, in light of this dialogue, the committee was certainly made aware that the original language of section 8547.8, subdivision (c) (which remains in § 8547.10, subd. (c)), was subject to the restrictive interpretation defendants now urge. That the Legislature chose to amend section 8547.8's subdivision (c), which pertains to state employees, but *not* section 8547.10's subdivision (c), which pertains to University employees, must be treated as substantively significant. (See *People v. Athar* (2005) 36 Cal.4th 396, 409 [30 Cal.Rptr.3d 570, 114 P.3d 806] ["[W]hen the Legislature uses a critical word or phrase in one statute, the omission of that word or phrase in another statute dealing with the same general subject generally shows a different legislative intent."]; see also *People v. Licas* (2007) 41 Cal.4th 362, 367 [60 Cal.Rptr.3d 31, 159 P.3d 507]; *In re Young* (2004) 32 Cal.4th 900, 907 [12 Cal.Rptr.3d 48, 87 P.3d 797].) Plaintiffs suggest that the Legislature's failure to amend section 8547.10, subdivision (c), when it amended section 8547.8, subdivision (c), was due simply to inadvertence or oversight, and that we therefore should fulfill the Legislature's intent by construing section 8547.10 *as if* the Legislature had amended it. In other words, plaintiffs suggest that the Legislature would certainly have amended section 8547.10, subdivision (c), at the same time that it amended section 8547.8, subdivision (c), if that section had been brought to its attention.

A serious problem with this argument is that the restrictive language of section 8547.10's subdivision (c), which pertains to University of California employees, *was* brought to the Legislature's attention twice, but the Legislature made no changes. The first such occasion was in 1994, when the Legislature was considering the bill that added section 8547.12 (relating to the California State University) to the Whistleblower Act. At that time, an organization called "The University Plaintiffs Co-op" complained about several "loopholes" in the Act and proposed (among other things) an amendment that would have authorized a damages action against the University of California whenever the University's resolution of a whistleblower retaliation complaint was unsatisfactory to the injured party. The views of this organization were summarized in various legislative committee analyses, indicating

that these committees gave consideration to the organization's proposals. (See Assem. Com. on Public Employees, Retirement, and Social Security, Analysis of Sen. Bill No. 2097 (1993–1994 Reg. Sess.) as amended Apr. 20, 1994, p. 2; Assem. Com. on Consumer Protection, Governmental Efficiency, and Economic Development, Analysis of Sen. Bill No. 2097 (1993–1994 Reg. Sess.) as amended Apr. 20, 1994, p. 2.) Nevertheless, the Legislature took no action at that time to amend the restrictive language in section 8547.10, subdivision (c). Later, in 2006, a bill was introduced that would have amended section 8547.10, subdivision (c), in virtually the same way the Legislature amended section 8547.8, subdivision (c), in 2001. (Sen. Bill No. 165 (2005–2006 Reg. Sess.) as amended Jan. 4, 2006, § 3, p. 10.) That bill is currently inactive. Ordinarily, we do not draw substantive conclusions based on legislative inaction (*Quinn v. State of California* (1975) 15 Cal.3d 162, 175 [124 Cal.Rptr. 1, 539 P.2d 761] ["legislative inaction is indeed a slim reed upon which to lean"]), but here we use this legislative history only to show that the restrictive language of section 8547.10, subdivision (c), was twice brought to the Legislature's attention and therefore that the Legislature's failure to amend that section in 2001 was not *necessarily* a matter of inadvertence or oversight.

Plaintiffs argue that defendants' interpretation of section 8547.10, subdivision (c), undermines the purpose of the Whistleblower Act, which as noted is to prevent retaliation against state employees who "report waste, fraud, abuse of authority, violation of law, or threat to public health." (§ 8547.1.) Plaintiffs assert that the availability of a civil remedy by which an employee could seek compensatory damages, punitive damages, and attorney fees would serve to deter whistleblower retaliation. That may well be true, but a statutory statement of purpose does not override the express limits the Legislature has placed in the statutory text; rather, the purpose is advanced only to the extent and in the manner the statutory text has specified. Tenfold damages might also deter whistleblower retaliation, but the statutory text does not impose such damages, and they are not therefore awarded.

Finally, plaintiffs point to the " ' "settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." ' " (*Younger v. Superior Court* (1978) 21 Cal.3d 102, 113 [145 Cal.Rptr. 674, 577 P.2d 1014], quoting *People v. Barksdale* (1972) 8 Cal.3d 320, 334 [105 Cal.Rptr. 1, 503 P.2d 257], quoting *Bruce v. Gregory* (1967) 65 Cal.2d 666, 673–674 [56 Cal.Rptr. 265, 423 P.2d 193]; see also *Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 290 [64 Cal.Rptr.3d 661, 165 P.3d 462]; *California School Employees Assn. v. Governing Bd. of South Orange County Community College Dist.* (2004) 124 Cal.App.4th 574, 588 [21 Cal.Rptr.3d 451] ["[I]n rare cases, . . . the literal meaning of the words may be disregarded to avoid absurd

results."].) Plaintiffs find absurdity in a rule that distinguishes between state employees and University of California employees, denying only the latter the possibility of a damages action after exhausting administrative remedies. We conclude, however, that a rational, nonabsurd basis for the distinction may be found in the University's unique status as a self-governing institution, and the Legislature's consequent desire to preserve the University's autonomy. (See *Campbell, supra,* 35 Cal.4th at pp. 320–321; see also p. 889, *ante.*) Significantly, the "grant of constitutional power to the University includes the grant of quasi-judicial powers" (*Campbell,* at p. 320) and "[t]he Regents may create a policy for handling whistleblower claims under their power to organize and govern the University." (*Id.* at p. 321.) Therefore, the Legislature could reasonably have intended the University to resolve whistleblower retaliation claims by way of its own internal procedures, reserving the alternative remedy of a damages action for those instances when the University fails to complete its process in a timely manner.[6]

■ We conclude that section 8547.10, subdivision (c), means what it says: a civil action for damages against the University is available only when the plaintiff employee has first filed a complaint with the University and the University has failed to reach a timely decision on the complaint.

## IV

■ Plaintiffs also assert common law claims of wrongful termination in violation of public policy. (See *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330] (*Tameny*).) In *Tameny,* we stated: "[W]hen an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." (*Id.* at p. 170.) Later, in *Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1095 [4 Cal.Rptr.2d 874, 824 P.2d 680] (*Gantt*), we clarified that a *Tameny* cause of action must be "carefully tethered to fundamental policies that are delineated in constitutional or statutory provisions."

Here, plaintiffs base their *Tameny* claims on the policy set forth in the Whistleblower Act, which declares "that state employees should be free to report waste, fraud, abuse of authority, violation of law, or threat to public health without fear of retribution." (§ 8547.1.) Plaintiffs also rely on Labor Code section 6310, which prohibits the firing of an employee who complains

---

[6] We recognize the possibility of abuse in the self-policing mechanism that the Legislature has established to prevent whistleblower retaliation at the University, but because we find no compelling evidence of legislative error, and because the statutory scheme is neither absurd nor inherently unfair, we must construe the law as written by the Legislature.

to a governmental agency having responsibility for regulating safety in the relevant industry. Plaintiffs argue that their *Tameny* claims are expressly preserved by section 8547.10, subdivision (f), which provides: "Nothing in this article shall be deemed to diminish the rights, privileges, or remedies of any employee under any other . . . state law . . . ." Plaintiffs assert that the tort we recognized in *Tameny* constitutes "other . . . state law" under this provision. Defendants respond, however, that a *Tameny* action is unavailable against a public entity such as the University, and therefore the savings clause found in section 8547.10, subdivision (f), is of no help to plaintiffs. We agree.

The Government Claims Act (§ 810 et seq.) establishes the limits of common law liability for public entities, stating: "Except as otherwise provided *by statute*: [¶] (a) A public entity is *not liable* for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." (§ 815, subd. (a), italics added.) The Legislative Committee Comment to section 815 states: "This section *abolishes all common law or judicially declared forms of liability for public entities*, except for such liability as may be required by the state or federal constitution, e.g., inverse condemnation. . . ." (Legis. Com. com., 32 West's Ann. Gov. Code (1995) foll. § 815, p. 167, italics added.) Moreover, our own decisions confirm that section 815 abolishes common law tort liability for public entities. (See *Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, 1179 [7 Cal.Rptr.3d 552, 80 P.3d 656]; *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1127–1128 [119 Cal.Rptr.2d 709, 45 P.3d 1171]; see also *Adkins v. State of California* (1996) 50 Cal.App.4th 1802, 1817–1818 [59 Cal.Rptr.2d 59]; *Michael J. v. Los Angeles County Dept. of Adoptions* (1988) 201 Cal.App.3d 859, 866–867 [247 Cal.Rptr. 504].)

In *Palmer v. Regents of University of California* (2003) 107 Cal.App.4th 899 [132 Cal.Rptr.2d 567], the Court of Appeal applied section 815 in a context similar to that presented here: a whistleblower retaliation claim against the University of California. The court observed: "The only statutory authorization for a civil damage action based on alleged retaliation against a University of California employee for reporting improper activity is section 8547.10. Accordingly, a university employee who believes she is the victim of retaliation is limited to a statutory claim for damages under section 8547.10." (*Palmer, supra,* at p. 909.) The court went on to affirm summary judgment against the plaintiff, who had asserted only a *Tameny* cause of action: "Because the 'classic *Tameny* cause of action' is a common law, judicially created tort . . . and not authorized by statute, it is not properly asserted against the Regents." (*Palmer, supra,* at p. 909, citations omitted.) Although the Court of Appeal's discussion of section 815 was dictum (see

*Palmer, supra*, at p. 910 & fn. 11), we agree with the *Palmer* court that section 815 bars *Tameny* actions against public entities.[7]

We are left, therefore, with plaintiffs' *Tameny* claims against the individual defendants. Plaintiffs argue that irrespective of whether section 815 abolishes common law liability for public entities, the individual employees are subject to common law liability, and under section 815.2, the University, as their employer, bears that liability in their place. Section 815.2, subdivision (a), codifies the doctrine of respondeat superior as it applies to public entities like the University, stating: "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee . . . ."

■ Plaintiffs, however, overlook the fact that a *Tameny* action for wrongful discharge can only be asserted against *an employer.* An individual who is not an employer cannot commit the tort of wrongful discharge in violation of public policy; rather, he or she can only be the agent by which *an employer* commits that tort. This conclusion flows logically from our reasoning in *Tameny.*

■ The tort we recognized in *Tameny*, and reaffirmed in *Gantt*, is premised on the wrongful termination of an employment relationship. If an employer terminates an employment relationship for a reason that contravenes some fundamental public policy, then the employer breaches a general duty imposed by law upon all employers and the employee's remedy therefore sounds in tort. (*Tameny, supra*, 27 Cal.3d at p. 176.) In that case, the various terms of the employment relationship are not the source of the employee's legal rights; rather, tort law is the source of the employee's legal rights, and the employment relationship is merely the medium through which the tort is inflicted. (*Ibid.*) Nevertheless, the breach of the employment relationship is an indispensable element of the tort, because it serves factually as the instrument of injury. Thus, there can be no *Tameny* cause of action without the prior existence of an employment relationship between the parties.

■ This point was elaborated upon by the Court of Appeal in *Weinbaum v. Goldfarb, Whitman & Cohen* (1996) 46 Cal.App.4th 1310 [54

---

[7] In *City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1158–1161 [77 Cal.Rptr.2d 445, 959 P.2d 752], we held that an employee could bring a *Tameny* cause of action for disability discrimination. The defendant in that case happened to be a public entity, but the question of a public entity's tort immunity under section 815 was not raised in that case. "It is axiomatic that cases are not authority for propositions not considered." (*People v. Ault* (2004) 33 Cal.4th 1250, 1268, fn. 10 [17 Cal.Rptr.3d 302, 95 P.3d 523].)

Cal.Rptr.2d 462]: "[T]he tort of wrongful discharge in violation of public policy . . . arises when an employer conditions employment upon required participation in unlawful conduct by the employee. But the fact that an employee discharged in violation of public policy has a tort remedy wholly independent of his express or implied contractual relationship with his employer [citation] *does not mean there exists a tort of 'wrongful termination in violation of public policy' independent of the duty arising from the employment relationship.* To the contrary, *the duty on which the tort is based is a creature of the employer-employee relationship,* and the breach of that duty is the employer's improper discharge of an employee otherwise terminable at the will or whim of the employer. [Citation.] *There is nothing in . . . any . . . case we have found to suggest that this tort imposes a duty of any kind on anyone other than the employer.* Certainly, there is no law we know of to support the notion that anyone other than the employer can discharge an employee." (*Id.* at p. 1315, italics omitted and added.) Later cases have followed *Weinbaum* in reaching the same conclusion. (See *Khajavi v. Feather River Anesthesia Medical Group* (2000) 84 Cal.App.4th 32, 53 [100 Cal.Rptr.2d 627]; *Phillips v. Gemini Moving Specialists* (1998) 63 Cal.App.4th 563, 576 [74 Cal.Rptr.2d 29]; *Jacobs v. Universal Development Corp.* (1997) 53 Cal.App.4th 692, 703–704 [62 Cal.Rptr.2d 446].)

 Plaintiffs rely on *Walrath v. Sprinkel* (2002) 99 Cal.App.4th 1237 [121 Cal.Rptr.2d 806], in which the Court of Appeal concluded that supervisory employees can be held personally liable under the California Fair Employment and Housing Act (§ 12900 et seq.; FEHA) for acts of retaliation. We recently rejected that conclusion (*Jones v. The Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1173–1174 [72 Cal.Rptr.3d 624, 177 P.3d 232]), and in any case, the holding of *Walrath* rested on the specific language of the retaliation provision of the FEHA, which applies to "any employer, labor organization, employment agency, *or person.*" (§ 12940, subd. (h), italics added.) We see no analogous justification for imposing personal liability on supervisorial employees based on a common law tort that depends on the existence of an employer-employee relationship between the tortfeasor and the victim. We conclude therefore that the common law *Tameny* cause of action for wrongful termination in violation of public policy lies only against an employer.[8]

---

[8] One might argue that even if, strictly speaking, a *Tameny* action is inappropriate against a supervisorial employee, we should nevertheless recognize an *analogous* tort that applies to the conduct of supervisors. In other words, we should hold that a supervisor who retaliates against a whistleblower violates a general duty the law imposes on all supervisors and therefore commits a tort *separate* from the tort he or she causes the employer to commit.

This argument does not, however, withstand careful analysis. The supervisor, when taking retaliatory action against the employee, is necessarily exercising authority the employer conferred on the supervisor, and it is *only that authority* that makes the supervisor's action injurious, not the action in itself. The words "You are fired," for example, have no legal

## V

Plaintiffs allege defendants engaged in "outrageous conduct" that was intended to, and did, cause plaintiffs "severe emotional distress," giving rise to common law causes of action for intentional infliction of emotional distress. The alleged wrongful conduct, however, occurred at the worksite, in the normal course of the employer-employee relationship, and therefore workers' compensation is plaintiffs' exclusive remedy for any injury that may have resulted. (*Livitsanos v. Superior Court* (1992) 2 Cal.4th 744, 754 [7 Cal.Rptr.2d 808, 828 P.2d 1195]; *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 25 [276 Cal.Rptr. 303, 801 P.2d 1054]; *Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 160 [233 Cal.Rptr. 308, 729 P.2d 743].)

■■ *Shoemaker v. Myers* is of particular relevance here because it involved termination of a whistleblower employee. We said: "To the extent plaintiff purports to allege any distinct cause of action, not dependent upon the violation of an express statute or violation of fundamental public policy, but rather directed at the *intentional, malicious* aspects of defendants' conduct . . . , then plaintiff has alleged no more than the plaintiff in *Cole v. Fair Oaks Fire Protection Dist.* . . . . The kinds of conduct at issue (e.g., discipline or criticism) are a normal part of the employment relationship. Even if such conduct may be characterized as intentional, unfair or outrageous, it is nevertheless covered by the workers' compensation exclusivity provisions." (*Shoemaker v. Myers, supra*, 52 Cal.3d at p. 25.) We reaffirmed this holding in *Livitsanos v. Superior Court*, which also involved a terminated employee: "So long as the basic conditions of compensation are otherwise satisfied (Lab. Code, § 3600), and the employer's conduct neither contravenes fundamental public policy (*Tameny* . . . , *supra*, 27 Cal.3d 167) nor exceeds the risks inherent in the employment relationship (*Cole [v. Fair Oaks Fire Protection Dist.]*, *supra*, 43 Cal.3d 148), an employee's emotional distress injuries are subsumed under the exclusive remedy provisions of workers' compensation." (*Livitsanos v. Superior Court, supra*, 2 Cal.4th at p. 754.)

These holdings apply equally here. Nor are the exceptions stated in *Livitsanos v. Superior Court, supra*, 2 Cal.4th at page 754, of any help to plaintiffs here. The exception for conduct that "contravenes fundamental public policy" is aimed at permitting a *Tameny* action to proceed despite the

significance if spoken by a junior-level employee who has no role in hiring and firing decisions; it is only when the speaker is in a position to exercise authority on behalf of the employer that these words have significance. Thus, in a retaliation case, it is the *employer's adverse employment action* that constitutes the substance of the tort, and the supervisor's action merges with that of the employer. We could hold that the supervisor commits an *independent* tort only if the supervisor's action were somehow *by itself* injurious, irrespective of the adverse employment action it causes the employer to take, but that is not alleged here.

workers' compensation exclusive remedy rule. As already discussed, however, plaintiffs' *Tameny* action is barred by section 815. As to the exception for conduct that "exceeds the risks inherent in the employment relationship," it might seem at first blush to apply here—based on the argument that whistleblower retaliation is not a risk inherent in the employment relationship—but we rejected this same argument in *Shoemaker v. Myers, supra,* 52 Cal.3d at page 25. Like plaintiffs here, the plaintiff in *Shoemaker* alleged whistleblower retaliation and also a *Tameny* cause of action, and although he incorporated these allegations as part of his claim of intentional infliction of emotional distress, we held workers' compensation to be his exclusive remedy and affirmed the trial court's dismissal of that cause of action. (*Shoemaker v. Myers, supra,* 52 Cal.3d at p. 26.) The same holding applies here.

Accordingly, we conclude that plaintiffs' causes of action for intentional infliction of emotional distress are barred by the workers' compensation exclusive remedy provisions.

## VI

We affirm the judgment of the Court of Appeal.

Baxter, J., Chin, J., and Corrigan, J., concurred.

**WERDEGAR, J.,** Concurring.—I agree with the majority that Government Code section 8547.10, subdivision (c) must be read as precluding a whistleblower from bringing a damages action against the University of California (University) when that person has made an internal complaint to the University and the University has reached a timely adverse decision finding its own actions did not constitute retaliation for a protected disclosure in violation of Government Code section 8547.10.[1] (Maj. opn., *ante,* at p. 898.) Like the majority, I reach this conclusion because the statute unambiguously states that a damages action following an internal complaint of retaliation for whistleblowing is not available "unless . . . the university has failed to reach a decision regarding that complaint within the time limits established for that purpose by the regents." (§ 8547.10, subd. (c).)

I write separately because, unlike the majority, I do not find this result "reasonable in light of the unique constitutional status of the University of California." (Maj. opn., *ante,* at p. 889.) To the contrary, this literal reading will act powerfully to defeat the purposes of the California Whistleblower Protection Act (§ 8547 et seq.) (the Act) with respect to University employees. As discussed below, I do not believe the same Legislature that in section

[1] All further unspecified statutory references are to the Government Code.

8547.10 created a civil action for damages on behalf of a whistleblower subjected to retaliation by the University "could reasonably have intended the University to resolve whistleblower retaliation claims by way of its own internal procedures" (maj. opn., *ante*, at p. 898) without any meaningful judicial review.

The decision we reach today, giving section 8547.10 its literal reading, will strongly undermine the purposes of the Act, whose central purpose is explained in section 8547.1: "The Legislature finds and declares that state employees should be free to report waste, fraud, abuse of authority, violation of law, or threat to public health without fear of retribution." For whistle-blowing employees to be confident they are protected against retaliation, they must have recourse to a fair and impartial decisionmaking process *outside* the line management of their employing agency or university. If the same government organization that has tried to silence the reporting employee also sits in final judgment of the employee's retaliation claim, the law's protection against retaliation is illusory. The Legislature recognized and met the need for independent review by expressly authorizing civil claims for retaliation by state agencies, the University of California, and the California State University. (§§ 8547.8, 8547.10, 8547.12.) Yet today's decision eliminates meaningful independent review for University of California employees.[2] As a result, a University employee, knowing that any complaint of retaliation will be decided by the University itself, will be unable to act "without fear of retribution." (§ 8547.1.) The legislative goal will be defeated, as University employees will have less reason to be "candid and honest without reservation in conducting the people's business." (*Ibid.*)

As noted, the majority finds this result consistent with legislative intent because of the University's significant autonomy in running its internal affairs. Had the Legislature simply exempted the University from the Act's strictures, I might agree. But it did not. By bringing the University under the Act's prohibitions on retaliation and providing University employees, like employees with state agencies, a civil damages action for retaliation, the Legislature made clear its view that "waste, fraud, abuse of authority, violation of law, or threat to public health" (§ 8547.1) in public education, as in other areas of government, are matters of vital concern to all the people of

---

[2] Because the University's process for resolving whistleblower retaliation complaints does not include the right to an evidentiary hearing before a neutral hearing officer, substantial-evidence review by petition for writ of administrative mandate is not available. (See Code Civ. Proc., § 1094.5.) On petition for ordinary mandate (*id.*, § 1085), the agency decision is reviewed on the much laxer and more limited arbitrary-and-capricious standard (*Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34–35, fn. 2 [112 Cal.Rptr. 805, 520 P.2d 29]; *Valnes v. Santa Monica Rent Control Bd.* (1990) 221 Cal.App.3d 1116, 1119 [270 Cal.Rptr. 636]), effectively insulating University decisions so long as they are timely made under regular procedures and are not facially irrational.

California—even when they occur at the University. The problems addressed by the Act, the Legislature manifestly believed, go beyond the internal affairs of the University and affect the public generally. Consequently, the Legislature intended its policy to protect University whistleblowers as well as those employed in other parts of state government.

The Act does recognize the University's administrative autonomy to the extent of permitting it to set its own procedures and timelines for the internal investigation of whistleblower complaints. (§ 8547.10, subds. (a), (c).) But at the same time the Legislature expressly permitted a civil damages action—and authorized criminal liability—against University managers and officials for their retaliation against whistleblowers. (*Id.*, subds. (b), (c).) This court's reading of the Act, making the University the judge of its own civil liability and leaving its employees vulnerable to retaliation for reporting abuses, thwarts the demonstrated legislative intent to protect those employees and thereby encourage candid reporting.

The literal reading of section 8547.10 we adopt today borders on the absurd, bringing into possible play the principle that language of a statute should not be given a literal meaning if doing so would result in absurd consequences the Legislature did not intend. (*Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 290 [64 Cal.Rptr.3d 661, 165 P.3d 462].) But when, as here, the statutory language is clear and unambiguous, to invoke this principle is to assert, in effect, that the language can be corrected on the ground it resulted from a drafting error. Courts should use this power to rewrite statutes "with great restraint," only where "the error is clear and correction will best carry out the intent of the Legislature." (*Bonner v. County of San Diego* (2006) 139 Cal.App.4th 1336, 1346, fn. 9 [44 Cal.Rptr.3d 116].) In the present case, I cannot be sure the language of section 8547.10, subdivision (c) resulted from a drafting error. While the language is clearly contrary to the overall purposes of the Act, its inclusion may have been the product of conceptual confusion or failure to fully consider the problem rather than an error in the drafting process itself.

As the majority explains, the legislative history of former section 10548, the predecessor to section 8547.8, can be read to suggest that when originally applied to state agency employees the presently disputed language was not intended to create a mere administrative remedies exhaustion requirement, but to bar a subsequent civil damages action in all cases in which the State Personnel Board reached a timely decision. (Maj. opn., *ante*, at pp. 890–893.) And the legislative history contains no indication that language was intended to operate differently when included in former section 10550, enacted in 1988 to extend protections to University employees. (Maj. opn., *ante*, at

pp. 892–893.)[3] For this reason, I cannot confidently conclude the disputed language was originally the result of drafting error.

In 2001, the Legislature amended section 8547.8 so as to clearly impose only an exhaustion requirement: a damages action by a state agency employee is now authorized when the State Personnel Board "has issued" timely findings as well as when it has "failed to issue" such findings. (See maj. opn., *ante*, at pp. 893–894.) The Legislature's failure to similarly amend section 8547.10 at the same time appears to have been an oversight. The amendment to section 8547.8 was proposed and drafted by an attorney for the California State Employees Association, an organization that represents state agency employees but not employees of the University. Nowhere in the transcript of the February 2001 hearing of the Senate Select Committee on Government Oversight at which the amendment was first proposed, or in the correspondence between the California State Employees Association and the committee chair that led directly to the amendment of section 8547.8, does any mention appear of section 8547.10 or of University employees, much less any indication of a desire to defer to the University's constitutional autonomy.[4] Unlike the majority (see maj. opn., *ante*, at p. 896), therefore, I see nothing significant in the Legislature's failure to amend section 8547.10 at the same time as section 8547.8.

While I therefore suspect the current text of section 8547.10 is the result of oversight, I cannot be sure. That the Legislature would have amended section 8547.10 at the same time as section 8547.8 had it been brought to its attention appears likely, but not certain. As the majority notes (maj. opn., *ante*, at pp. 896–897), since 2001 the problematic language of section 8547.10 *has* been brought before the Legislature, with no action thus far having been taken. In any event, that the Legislature *should*—logically—have amended section 8547.10 when it amended section 8547.8 is not a sufficient warrant for us to read the section as if it had been amended. While the court may correct drafting errors, for us to reverse a legislative failure to act—absent certainty that the failure was inadvertent and not a legislative choice, however ill advised—would overstep our proper bounds.

---

[3] In using parallel language for the new statute, the Legislature may have overlooked the fact that in former section 10548 the language applied to State Personnel Board findings made after a *hearing* (see maj. opn., *ante*, at p. 891), whereas the new statute, former section 10550, did not require the University to hold hearings on whistleblower retaliation complaints. The difference is important, because adverse State Personnel Board findings after an evidentiary hearing were presumably reviewable for substantial evidence, while University findings were not. (Maj. opn., *ante*, at pp. 891–892; see fn. 2, *ante*, at p. 904.)

[4] Indeed, nowhere in *any* of the statutory and legislative history I have reviewed is there any suggestion the Legislature intentionally distinguished the University from state agencies with respect to protection of whistleblowers against retaliation, because of the University's relative autonomy over its internal affairs. That the Legislature had such a distinction in mind is simply the majority's invention.

In sum, we cannot know whether the Legislature intended section 8547.10, subdivision (c) to state only an administrative exhaustion requirement or to preclude a damages action as well, when the University timely denies a whistleblower's retaliation claim. The latter interpretation accords with the statute's unambiguous language but is contrary to the overall purposes and structure of the Act. I urge the Legislature to revisit this statute and if, as I suspect, it intended to create only a requirement that complainants exhaust their internal remedies, to amend the statute in a manner that makes that intent clear.

George, C. J., and Moreno, J., concurred.