**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CYNTHIA LAWLER,
*Plaintiff-Appellant*,

v.

MONTBLANC NORTH AMERICA,
LLC, and JAN-PATRICK SCHMITZ,
*Defendants-Appellees*.

No. 11-16206

D.C. No.
10-cv-01131-
LKH

OPINION

Appeal from the United States District Court
for the Northern District of California
Lucy H. Koh, District Judge, Presiding

Argued and Submitted
November 7, 2012—San Francisco, California

Filed January 11, 2013

Before: Ronald M. Gould and Milan D. Smith, Jr., Circuit
Judges, and Kevin Thomas Duffy, District Judge.[*]

Opinion by Judge Duffy

---

[*] The Honorable Kevin Thomas Duffy, United States District Judge for
the Southern District of New York, sitting by designation.

## SUMMARY[**]

### California Law

The panel affirmed the district court's summary judgment in favor of an employer based on the former employee's failure to present a genuine issue of material fact as to each of her four claims under California state law.

The panel held that plaintiff failed to present a genuine issue of material fact as to her claims for: disability discrimination under the California Fair Employment and Housing Act; retaliation under the Act; harassment under the Act; and intentional infliction of emotional distress under California state tort law.

### COUNSEL

Michael J. Korda, Kraw and Kraw, Mountain View, California, for Plaintiff-Appellant.

George H. Parsells, III, and Vimal K. Shah, McElroy, Deutsch, Mulvaney & Carpenter, LLC, Morristown, New Jersey, for Defendants-Appellees.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

DUFFY, District Judge:

In this diversity action, Plaintiff-Appellant Cynthia Lawler ("Lawler") appeals the district court's grant of summary judgment in favor of Defendants-Appellees Montblanc North America, LLC ("Montblanc") and its President and Chief Executive Officer Jan-Patrick Schmitz ("Schmitz") (collectively, "Defendants"), on each of her four claims: (1) disability discrimination raised against Montblanc under the California Fair Employment and Housing Act ("FEHA"); (2) retaliation raised against Montblanc under FEHA; (3) harassment raised against Defendants under FEHA; and (4) intentional infliction of emotional distress raised against Defendants under California state tort law.

Because Lawler fails to present a genuine issue of material fact as to each of her four claims, we affirm.

## I.  BACKGROUND[1]

Montblanc makes fine writing instruments, jewelry, timepieces, and other luxury products that it sells wholesale and in boutique retail stores.  From September 2001 through October 2009, Montblanc employed Lawler as a manager at its Valley Fair Shopping Center boutique retail store in Santa Clara, California ("Store").    At the time of Lawler's

---

[1] The court accepts Lawler's version of the disputed facts as presented in her deposition testimony and appellate briefs, and draws all reasonable inferences in her favor.  *See Szajer v. City of Los Angeles*, 632 F.3d 607, 610 (9th Cir. 2011).

termination, the Store employed four full-time employees, including Lawler, and two part-time employees.

Lawler's duties as a manager included, among other things, hiring, training, and supervising sales staff; overseeing and developing customer relations; administrating stocking and inventory; cleaning; creating store displays; and preparing sales reports.  Lawler could only perform her job duties in the store.

Lawler testified that each year, from the Friday after Thanksgiving until January 2 (the "Holiday Season"), she worked increasing hours beginning with sixty hours per week and ending with seventy hours per week.  The Store makes one-third of its annual sales during the Holiday Season, and Montblanc maintains a policy prohibiting employee vacations during that period.

On June 30, 2009, Lawler's rheumatologist, Dr. Neelakshi Patel ("Dr. Patel"), diagnosed her with a chronic condition known as psoriatic arthritis and recommended that Lawler work a reduced workweek of twenty hours "due to medical reasons."  On July 23, Lawler e-mailed Teresa Eyre ("Eyre"), Montblanc's Regional Manager in Las Vegas, Nevada, concerning her need for reduced working hours.  The next day, Lawler telephoned Mary Gorman ("Gorman"), Montblanc's Director of Human Resources to request a reduced work week of twenty-five hours.  Gorman stated that she would send a letter to Dr. Patel requesting information that would allow Montblanc to assess whether it could accommodate Lawler's request.  On July 29, Gorman sent an e-mail and letter to Lawler stating in relevant part:

> As you know, the nature of your position
> as Boutique Manager makes it essential that
> you personally be present at the store . . . .
> Thus, Boutique Managers typically are
> present in the store at least 40 hours per week.
>
> . . . Kindly have your treating doctor provide
> us, in writing, details of the following: (i) the
> nature, severity and duration of your
> impairment; (ii) the activities the impairment
> limits; (iii) the extent to which the impairment
> limits your ability to perform those activities;
> and (iv) what, if any, accommodation can be
> provided that would enable you to perform the
> essential functions of your position.

On August 4, Lawler fractured the third and fourth toes
on one of her feet during a fall in her bedroom. The fall was
an "indirect consequence" of her condition, and occurred
when Lawler "turned to grab [her] purse to go to work and
[her] hip gave out from the arthritis." On August 5, a
podiatrist set her foot and placed it in an orthopedic shoe.
The podiatrist certified that Lawler could return to work on
September 2, 2009. After her examination, Lawler
telephoned Gorman to inform her of the accident and of
Lawler's need for temporary disability leave. Gorman asked
Lawler to fax her documentation regarding the injury for the
purpose of notifying Montblanc's disability carrier. Not
having a fax machine, Lawler drove by herself from the
podiatrist's office to the Store and used the office fax
machine.

While Lawler was in the Store, Schmitz and Mike
Giannattasio ("Giannattasio"), Montblanc's Vice President of

Retail, entered on a routine inspection visit. Upon finding Lawler in the back office, Schmitz asked Lawler in an "abrupt, brisk" manner why she was not dressed in work attire, to which Lawler replied that she "was off work on disability." Schmitz then informed Lawler that he and Giannattasio were going to walk around the mall to survey the "competition." When Lawler informed Schmitz that she would not be in the office when they returned, Schmitz said to her in an "intimidating," "abrupt," and "gruff" tone, "We will talk when I get back."

After thirty or forty minutes, Schmitz and Giannattasio returned to the Store and approached Lawler in her office. Schmitz said that they "needed to take a look around," and he "stood by the door and stared at [Lawler] until [she] got up to go out and look around." During their walk around the Store, Schmitz "herded the group of [employees] around the boutique" and "started to get very, very angry" when he noticed that the newest eyewear products were not on display. Lawler explained that the display cases were inadequately sized to properly display the merchandise, which she demonstrated to Schmitz by physically measuring a display case. Schmitz "just got mad that [Lawler] was confronting him."

Schmitz then "herded" the group toward another display, during which time an associate stepped on Lawler's broken foot. Giannattasio and another employee offered Lawler a seat while Schmitz finished examining the Store. Schmitz then asked Lawler to provide him with "specifics on . . . the races of [Montblanc's] customers, the racial background of the geographic[] area of San Jose, [and for a] list of chambers of commerce" by the following Monday. Lawler reminded him that she "was not working, [and] could not do it."

Schmitz said, "[Y]ou will do it or else."  Lawler agreed to e-mail the information from home.  Schmitz and Giannattasio then accompanied Lawler to a back room where Schmitz "told [her] that he didn't like the way [the] repair parts were being stored" and "questioned [her] about [the] signature engraving service."  Afterward, Schmitz and Giannattasio left the Store.

Montblanc maintains security cameras at their boutique stores that capture video but not audio.  Per Montblanc's regular practice, the security video capturing the events of August 5, 2009, was automatically overwritten approximately thirty days after it was recorded.

Upon returning home, Lawler telephoned Eyre and informed her of Schmitz's visit and of her concern about completing the assignments.  Eyre told her not to worry about the paperwork.

On August 11, Lawler sent a letter to Gorman expressing her concerns about Schmitz's visit to the Store.  Specifically, Lawler complained that: (1) Schmitz "made it very clear that in spite of [her] disability, he expected [her] to stay and work" while he walked around the mall; (2) she "felt extremely intimidated and felt that [she] had no choice but to stay in spite of the fact that [she] was disabled and in pain"; (3) a coworker stepped on her broken foot while she was walking around the sales floor at Schmitz's direction; and (4) Schmitz "gave [her] several assignments that he told [her] personally to take care of with deadlines that were within a week, again ignoring [her] disability."

On August 13, Lawler telephoned Gorman to discuss the August 11 letter.  During the conversation, Gorman told

Lawler that she did not want to show Schmitz the letter and that Lawler should delegate the assigned work to the assistant manager to avoid "more problems." Lawler insisted that Gorman process the complaint. Gorman did not interview any Store employees regarding Schmitz's visit and never inquired about the August 5 security video.

On September 2, Dr. Patel drafted a letter recommending that Lawler take an extended leave of absence until January 5, 2010, "to avoid further flare-ups" related to her psoriatic arthritis. On September 4, Lawler e-mailed Gorman and attached Dr. Patel's September 2 letter. On September 10, Gorman sent a letter to Dr. Patel listing Lawler's job duties and asking whether Montblanc could provide any reasonable accommodation "that would permit [Lawler] to resume being regularly present at the store and performing the duties of her position." The letter stated that Lawler's duties "do not involve significant strenuous lifting or other physical activity," and asked "when [Lawler] would be able to resume her regular duties." On October 6, Dr. Patel faxed a note to Gorman stating that "[t]he patient's status has not changed, therefore the recommendation that she be off until Jan. 5th 2010 has not changed."

On October 13, Gorman telephoned Lawler and told her that Montblanc was terminating her employment effective October 31, 2009. On October 14, Gorman sent a letter to Lawler memorializing the October 13 conversation. The letter stated in relevant part:

> As we advised you in our email of July 29, 2009, it is essential for a boutique manager to be in regular attendance at the boutique. Nevertheless, you have been absent since

> September 5, 2009, and your doctor, Dr.
> Neelakshi Patel, has advised that you are
> unable to return to work until early January
> 2010. Because we must have a manager in
> the Valley Fair boutique, we must replace
> you.

In the letter, Montblanc offered Lawler a severance payment of $17,405 contingent upon her execution of a separation agreement and general release. Lawler did not accept the severance offer.

In response to the vacancy, Montblanc assigned Eyre as the "de facto" manager of the Store and had the assistant manager perform managerial duties. Montblanc hired a new manager in May 2010.

Lawler subsequently filed a complaint with the California Department of Fair Employment and Housing against Montblanc and Schmitz. On December 2, 2009, the Department issued Lawler a Notice of Case Closure and Right-To-Sue Notice. On February 16, 2010, Lawler filed a complaint against Defendants in the Superior Court of California, which Defendants then removed to federal court.

Lawler testified at her November 2010 deposition that she had been unemployed since October 2009, had not applied for any positions, or made any efforts to secure employment. Lawler applied for and exhausted Montblanc-provided and State-provided disability benefits between September 2009 and September 2010 due to her inability to work. In September 2010, Lawler applied for Social Security disability benefits.

On April 15, 2011, the district court granted Defendants' summary judgment motion.  Lawler timely appealed.

## II. STANDARD OF REVIEW

This court reviews de novo a district court's grant of summary judgment, drawing all reasonable inferences in favor of the non-moving party.  *Szajer*, 632 F.3d at 610.  Summary judgment is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

## III.    DISCUSSION

Lawler appeals the district court's grant of Defendants' summary judgment motion as to each of her four causes of action.

### A. Disability Discrimination (Cal. Gov't Code § 12940(a))

Section 12940(a) of FEHA prohibits an employer from discharging a physically disabled employee because of that employee's physical disability.  An employer may, however, lawfully discharge an employee who "is unable to perform his or her essential duties . . . even with reasonable accommodations."  Cal. Gov't Code § 12940(a)(1).[2]

---

[2] Lawler did not assert an FEHA claim against Montblanc for failing "to make reasonable accommodation for the known physical . . . disability of an applicant or employee," § 12940(m), or for failing to "engage in a timely, good faith, interactive process with the employee or applicant to

The California Supreme Court has adopted the tripartite burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973), to analyze disparate treatment claims. *See Guz v. Bechtel Nat'l, Inc.*, 8 P.3d 1089, 1113 (Cal. 2000). Under *McDonnell Douglas*, the plaintiff has the initial burden of establishing a prima facie case of discrimination. *Id.* Once a prima facie case is shown, a presumption of discrimination arises and the burden shifts to the defendant to show that the adverse employment action was taken for a legitimate, nondiscriminatory reason. *Id.* at 1114. Stating a legitimate, nondiscriminatory reason negates the presumption of discrimination and shifts the burden back to the plaintiff to demonstrate that the proffered reason is mere pretext for discrimination. *Id.*

When an employer moves for summary judgment, however, "the burden is reversed . . . because the defendant who seeks summary judgment bears the initial burden." *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011) (quotation omitted). "Thus, [t]o prevail on summary judgment, [the employer is] required to show either that (1) plaintiff could not establish one of the elements of [the] FEHA claim or (2) there was a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment." *Id.* (quotation omitted) (alterations in original). If the employer meets its burden, the discharged employee must demonstrate either "that the defendant's showing was in fact insufficient or . . . that there was a triable

---

determine effective reasonable accommodations," § 12490(n). Lawler also did not claim a violation under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101–12213.

issue of fact material to the defendant's showing." *Id.* at 746 (quotation omitted) (omission in original).

To show a prima facie case of disability discrimination under FEHA, a plaintiff must show that: (1) she is a member of a protected class; (2) she was performing competently in the position she held; (3) she suffered an adverse employment action, such as termination; and (4) some other circumstances that suggest a discriminatory motive. *Zeinali v. Raytheon Co.*, 636 F.3d 544, 552 (9th Cir. 2011) (citing *Guz*, 8 P.3d at 1113).

Lawler fails to establish a prima facie case because she was not competently performing her position as store manager.

California state courts analyze whether an employee is competently performing a position by determining whether she can perform the "essential duties" of her position with or without reasonable accommodation. *Green v. State*, 165 P.3d 118, 122–23 (Cal. 2007). In *Green*, the California Supreme Court held that

> by its terms, section 12940 makes it clear that drawing distinctions on the basis of physical or mental disability is not forbidden discrimination *in itself*. Rather, drawing these distinctions is prohibited *only if* the adverse employment action occurs because of a disability *and* the disability would not prevent the employee from performing the essential duties of the job, at least not with reasonable accommodation. Therefore, in order to establish that a defendant employer has

> discriminated on the basis of disability in violation of FEHA, the plaintiff employee bears the burden of proving he or she was able to do the job, with or without reasonable accommodation.

*Id*. at 123 (emphases in original); *see also* § 12940(a)(1).

Montblanc properly asserts that Lawler cannot competently perform her job duties as manager.  Here, the essential duties of a boutique manager are undisputed.  Lawler testified that a manager is responsible for hiring, training, and supervising sales staff; overseeing and developing customer relations; administrating stocking and inventory; cleaning; creating store displays; and preparing sales reports.  She further stated that the duties of a manager can only be performed in the store.

Lawler, however, offers no factual support showing she can perform any job duty of a boutique manager, regardless of the accommodation.  Rather, she admitted that her disability makes it impossible for her to fulfill the duties of her position and that she has been unemployed since October 2009, has not applied for any positions, has made no effort to secure employment, and has exhausted her disability benefits.

Lawler contends that Montblanc "cannot argue that it met its burden of showing that Plaintiff was not able to do the job with or without reasonable accommodation" because it denied her requests for reduced hours and a five-month leave of absence.  This argument ignores the holding in *Green* that "the plaintiff employee bears the burden of proving he or she was able to do the job, with or without reasonable accommodation."  165 P.3d at 123; *see also Kennedy v.*

*Applause, Inc.*, 90 F.3d 1477, 1482 (9th Cir. 1996) (holding employee who was "totally disabled" could not present any "genuine issue that she could have performed her job with the proposed, or any other, accommodation" under the Americans with Disabilities Act). Here, Montblanc has shown that Lawler cannot perform the essential functions of store manager by offering her admissions that her disability prevents her from performing any work. Lawler, in response, offers no submission establishing a triable issue of fact. Summary judgment on this claim is therefore proper.

## B.  Retaliation (Cal. Gov't Code § 12940(h))

FEHA makes it unlawful for an employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."  Cal. Gov't Code § 12940(h).

California courts also employ the *McDonnell Douglas* burden-shifting framework in analyzing retaliation claims. *Yanowitz v. L'Oreal USA, Inc.*,116 P.3d 1123, 1130 (Cal. 2005).  On appeal, the parties contest only whether Montblanc provided a legitimate, nondiscriminatory reason and whether that reason is pretext.

### i.  Whether Montblanc proffered a legitimate nondiscriminatory reason

Montblanc submits that it terminated Lawler's employment because she could not perform her job duties as a boutique manager.

In evaluating a legitimate nondiscriminatory reason, "the ultimate issue is simply whether the employer acted with *a motive to discriminate illegally*. Thus, 'legitimate' reasons in this context are reasons that are *facially unrelated to prohibited bias*, and which, if true, would thus preclude a finding *of discrimination*." *Guz*, 8 P.3d at 1115–16 (emphases in original) (internal citation omitted).

In *Lucent Technologies*, this court held that an employer proffered a legitimate, nondiscriminatory reason for terminating a cable installer's employment because the employee could not perform the essential functions of the position. 642 F.3d at 746 (recognizing an employer's inability-to-perform defense (citing Cal. Code Regs. tit. 2, § 7293.8(b))). Here, Montblanc states the same reason.

Lawler urges the court to reject Montblanc's proffered reason because its decision to terminate her employment was made with knowledge that her absences from work were disability related. Lawler's argument is unpersuasive because the FEHA only requires the reason to be "facially unrelated to prohibited bias." *Guz*, 8 P.3d at 1115–16 (emphasis removed). Montblanc's stated reason was based on business concerns. Montblanc does one-third of its annual business during the two-month period Lawler was unable to perform her job duties. Montblanc stated a need for a manager in the Store, yet Lawler and Dr. Patel provided no indication when, if ever, Lawler could perform her essential job duties.

Because Montblanc's stated cause for termination is "facially unrelated to prohibited bias," *Id.*, the burden shifts back to Lawler to prove that the reason is pretext for unlawful discrimination.

### ii. Whether Montblanc's proffered reason is pretext

A plaintiff must offer "specific" and "substantial" circumstantial evidence to prove pretext in a retaliation claim under FEHA. *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1284 (9th Cir. 2001).

Lawler's arguments in support of her claim of pretext do not carry her burden. She first asserts that the close temporal proximity between her filing the complaint on August 11, 2009, and her termination on October 31, 2009, establishes Montblanc's retaliatory intent. Lawler next contends that Montblanc's true cause for firing her was unlawful retaliation because it did not hire a new manager until May 2010—seven months after her termination. While this evidence was sufficient to establish a prima facie case, *Arteaga v. Brink's, Inc.*, 77 Cal. Rptr. 3d 654, 676 (Ct. App. 2008), we hold that it does not constitute a "substantial" offering sufficient to overcome Montblanc's proffered legitimate, nondiscriminatory reason for terminating her employment.

Because Lawler points to no evidence that would raise a triable issue of whether Montblanc's true reason was discriminatory, we affirm summary judgment on this claim.

### C. Harassment (Cal. Gov't Code § 12940(j))

FEHA prohibits harassment of an employee. Cal. Gov't Code § 12940(j)(1). To establish a claim for harassment, a plaintiff must demonstrate that: (1) she is a member of a protected group; (2) she was subjected to harassment because she belonged to this group; and (3) the alleged harassment was so severe that it created a hostile work environment. *See*

*Aguilar v. Avis Rent A Car Sys., Inc.*, 980 P.2d 846, 851 (Cal. 1999). The plaintiff must show a "concerted pattern of harassment of a repeated, routine or a generalized nature." *Id.* Unlike discrimination claims, harassment "consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management." *Reno v. Baird*, 957 P.2d 1333, 1337 (Cal. 1998); *see also Janken v. GM Hughes Elecs.*, 53 Cal. Rptr. 2d 741, 746 (Ct. App. 1996). For example, "commonly necessary personnel management actions such as hiring and firing, job or project assignments, . . . promotion or demotion, [and] performance evaluations, . . . do not come within the meaning of harassment." *Reno*, 957 P.2d at 1336 (quotation omitted).

Here, Lawler asserts a harassment claim based on Schmitz's conduct during his August 5, 2009 store visit. Lawler gave deposition testimony that Schmitz questioned her appearance, criticized the display of merchandise, instructed her to perform work-related assignments, and disagreed with the way she stored repair parts. Schmitz's alleged conduct relates to business operations and, more specifically, to Lawler's position as a manager. Such conduct does not constitute harassment under the FEHA. *See id.* Further, even if Schmitz's conduct was unrelated to business and personnel management, a single incidence of the "gruff," "abrupt," and "intimidating" behavior Lawler described is not sufficiently severe to constitute a hostile working environment. *See Aguilar*, 980 P.2d at 851; *see also Lyle v. Warner Bros. Television Prods.*, 132 P.3d 211, 223 (Cal. 2006) ("With respect to the pervasiveness of harassment, courts have held an employee generally cannot recover for harassment that is occasional, isolated, sporadic, or trivial . . . .").

Finally, Lawler argues that the district court abused its discretion by declining to draw a negative inference of discrimination against Defendants because they "willfully" destroyed the August 5, 2009 security tape capturing the exchange between Schmitz and Lawler. *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos.*, 306 F.3d 806, 824 (9th Cir. 2002). The district court, however, accepted Lawler's version of the August 5, 2009 store visit as true in making its determination. Lawler's spoliation argument is therefore meritless.

## D. Intentional Infliction of Emotional Distress

California recognizes a cause of action for intentional infliction of emotional distress ("IIED") when there is: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 209 P.3d 963, 976 (Cal. 2009) (quotation omitted). A defendant's conduct is "outrageous" when it is so "extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (quoting *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 819 (Cal. 1993)). "Liability for intentional infliction of emotional distress does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* (internal quotation omitted).

Here, Schmitz's "gruff," "abrupt," and "intimidating" conduct cannot be characterized as exceeding all bounds of that tolerated in a civilized community. His conduct and criticisms relate to the Store's business operations and

Lawler's performance as a manager. While Schmitz may have inconsiderately and insensitively communicated his dissatisfaction of Lawler's managerial performance, this is not conduct from which California tort law protects employees. *See Schneider v. TRW, Inc.*, 938 F.2d 986, 992–93 (9th Cir. 1991) (affirming summary judgment against plaintiff's IIED claim where her supervisor "screamed and yelled in the process of criticizing her performance, threatened to throw her out of the department and made gestures she interpreted as threatening"); *Janken*, 53 Cal. Rptr. 2d at 756 (dismissing IIED claim where allegations only involved criticism of work performance and management of personnel).

Lawler's alleged emotional distress is not "severe." "Severe emotional distress means 'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.'" *Hughes*, 209 P.3d at 976 (quoting *Potter*, 863 P.2d at 821) (alteration in original). Lawler testified that her emotional injuries manifest as "[a]nxiety, sleeplessness, upset stomach, [and] sometimes muscle twitches." Clearly, these injuries alone do not rise to the level of "severe." *See id.* at 976–77 (holding plaintiff's asserted "discomfort, worry, anxiety, upset stomach, concern, and agitation" resulting from defendant's comments made to her on the telephone and at her place of business were not sufficiently "severe" for IIED claim).

Finally, for the reasons stated above, we do not accept Lawler's argument that Defendants' failure to preserve the

security tape capturing Schmitz's conduct compels the court to draw an adverse inference against them.[3]

## IV.    CONCLUSION

For the foregoing reasons, we affirm the district court's order granting summary judgment to Defendants on each of Lawler's claims.

**AFFIRMED.**

---

[3] Because we affirm the district court's grant of Defendants' summary judgment motion on other grounds, we do not address Defendants' argument that Lawler's IIED claim is preempted by California workers' compensation law.