**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| LOUIS W. JEFFERSON, | No. 14-56189 |
| Plaintiff - Appellant, | D.C. No. 2:13-cv-04453-PSG-SS |
| v. | |
| THE BOEING COMPANY, | MEMORANDUM[*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, District Judge, Presiding

Argued and Submitted June 9, 2016
Pasadena, California

Before: RAWLINSON and BEA, Circuit Judges, and EATON, Judge.[**]

Appellant Louis W. Jefferson (Jefferson) appeals a district court order

granting summary judgment in favor of Appellee The Boeing Company (Boeing).

Appellant contends the district court improperly excluded evidence that would

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] Richard K. Eaton, Judge of the United States Court of International Trade, sitting by designation.

have raised genuine factual disputes as to his age and retaliatory discrimination claims under the California Fair Employment and Housing Act (FEHA), Cal. Gov't Code § 12900 et seq., as well as his claims under California tort law for intentional and negligent infliction of emotional distress. Appellant insists this evidence demonstrates he was reclassified into an incorrect job category in 2009 because of his age, and this misclassification led to his layoff in 2011.

California courts have adopted the three-step burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to evaluate FEHA claims. *See Schechner v. KPIX-TV*, 686 F.3d 1018, 1023 (9th Cir. 2012). Under that framework, Jefferson must first establish a prima facie case of age discrimination. *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123 (9th Cir. 2000). If he does so, the burden of production shifts to Boeing to rebut Jefferson's prima facie case by articulating a legitimate, non-discriminatory reason for its challenged employment actions. *Id.* at 1123–24. If rebutted, the burden shifts back to Jefferson to show that Boeing's reasons were pretextual, and the true reason for its actions was unlawful discrimination. *Id.* at 1124.

Appellant met his "minimal" burden of establishing a prima facie case of age discrimination. *See Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). Boeing, in turn, rebutted Jefferson's prima facie case by articulating legitimate,

non-discriminatory reasons for the challenged employment actions. Boeing offered evidence that the reclassification resulted from the reasoned deliberations of its Human Resources Department and several Boeing managers, who were indisputably uncertain as to Jefferson's correct job classification, as demonstrated by emails offered by Jefferson. As to his later termination, there is no dispute that Jefferson's layoff was part of a company-wide reduction-in-force (RIF), that the RIF itself was conducted in an age-neutral manner, and that Jefferson was not replaced once terminated as his position was eliminated entirely.

Appellant fails to demonstrate that Boeing's proffered legitimate, non-discriminatory reasons were "pretextual 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Chuang*, 225 F.3d at 1124 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450

U.S. 248, 256 (1981)).  Even accepting Jefferson's evidence as true,[1] it only shows that he disagreed with his employer about his proper job classification, but does not show Boeing's reason for the reclassification was pretextual.  *See Guz v. Bechtel Nat'l Inc.*, 8 P.3d 1089, 1115 (Cal. 2000) ("[An employer's] true reasons [for an employment action] need not necessarily have been wise or correct.  While the objective soundness of an employer's proffered reasons supports their credibility . . . , the ultimate issue is simply whether the employer acted with *a motive to discriminate illegally*." (citations omitted)).

---

[1]  We note that the district court did commit legal error in deeming inadmissible Jefferson's evidence about Arechiga's and Czopek's alleged statements, both of which were plainly admissible as admissions of party agents under Federal Rule of Evidence 801(d)(2).  Similarly, Jefferson's testimony that 90 percent of his job obligations were engineering-related, which was based on his personal knowledge of his daily activities, was admissible.  *See Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497–98 (9th Cir. 2015) (a plaintiff's testimony may be rejected as "self-serving" and "uncorroborated" when it states mere "conclusions and not facts that would be admissible evidence"; but where evidence is "based on personal knowledge, legally relevant, and internally consistent," the fact that the plaintiff's testimony is self-serving or uncorroborated goes to its *weight*, not its admissibility).  Nevertheless, Czopek's statement and Jefferson's testimony do not create a triable issue of fact; they merely affirm that Jefferson's job obligations did not fit well into *any* job classification, and that Jefferson and Boeing disagreed about which classification *best* characterized Jefferson's "unique" tasks.  That does not tend to show that Boeing's proffered age-neutral reasons were mere pretext.  Evidence of Arechiga's 2008 statement cannot alone create a triable issue of fact on step three of the *McDonnell Douglas* framework, because the significant time lapse between the statement and Jefferson's reclassification (almost one year) and termination (over three years) negates a reasonable inference of causation.

Jefferson's argument that his misclassification, from a Systems Engineer to a Government Property Specialist, put him at a higher risk for layoff because he was evaluated against other Government Property Specialists, who performed different work than Jefferson, also fails. The evidence shows the RIF was not limited to Government Property Specialists, but also extended to Systems Engineers; 16 Government Property Specialists were laid off, while 366 Systems Engineers were terminated. Even if Jefferson had not been reclassified, the RIF process would have reached his previous job classification.[2]

Jefferson also fails to cast doubt on Boeing's claim that his termination was part of a company-wide, age-neutral RIF. Appellant offered statistical evidence showing that Boeing hired many junior and mid-level employees for engineering positions around the time of Jefferson's termination. But Jefferson fails to offer

---

[2] While age discrimination claims brought pursuant to the Age Discrimination in Employment Act of 1967 (ADEA), Pub. L. 90-202, 81 Stat. 602 (1967) (codified at 29 U.S.C. § 621 et seq.), are analyzed to determine "whether the employee would not have been discharged 'but for' his age," *Cassino v. Reichhold Chems., Inc.*, 817 F.2d 1338, 1343–44 (9th Cir. 1987), this Court has held that "[t]he FEHA's express purpose of 'provid[ing] effective remedies that will . . . prevent and deter unlawful employment practices' suggests that section 12940(a)'s prohibition on discrimination is not limited to instances where discrimination is a 'but for' cause of the employment decision." *Harris v. City of Santa Monica*, 294 P.3d 49, 64 (Cal. 2013) (quoting Cal. Gov't Code § 12920.5). Nonetheless, it is notable that Jefferson's claim also fails to meet the ADEA's stricter standard.

any evidence that those employees were hired to replace Jefferson (formerly a senior-level systems engineer) or that the new employees performed any of the same tasks as the more senior-level engineers who were laid off. Without such evidence, these statistics fail to demonstrate a "stark pattern of discrimination unexplainable on grounds other than age." *Palmer v. United States*, 794 F.2d 534, 539 (9th Cir. 1986) (internal quotation marks and citation omitted). Indeed, that Boeing was hiring a large number of entry-level engineers does not create a genuine factual dispute as to whether Boeing's proffered reasons for its employment actions were "pretext[s] for unlawful discrimination." *See Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013).

As to Jefferson's second claim of retaliatory discrimination, he made a showing that he engaged in a protected activity by pointing to a comment he allegedly made to his supervisor in 2009 after his reclassification, but failed to show this comment was related to his termination two years later, particularly given the temporal gap. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001) ("Action taken . . . 20 months later suggests, by itself, no causality at all."); *Manatt v. Bank of Am., NA*, 339 F.3d 792, 802 (9th Cir. 2003) ("While courts may infer causation based on the proximity in time between the protected action and the allegedly retaliatory employment decision, such an inference is not possible in this

case because approximately nine months lapsed between the date of [the] complaint and the . . . alleged adverse decisions." (internal quotation marks and citations omitted)).

Finally, as to Jefferson's derivative tort claims, the California Workers' Compensation scheme is the sole and exclusive remedy for employees against employers for injuries arising during the course of employment, unless an employer's conduct violates a statute or fundamental public policy. *See Miklosy v. Regents of Univ. of Cal.*, 188 P.3d 629, 645–46 (Cal. 2008). Having failed to raise a genuine dispute with respect to his FEHA claims, Jefferson's derivative tort claims are preempted by the California Workers' Compensation Law. *See* Cal. Lab. Code § 3602(a).

**AFFIRMED.**