**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| MICHAEL BUHL, | No. 19-15730 |
| Plaintiff-Appellant, | |
| v. | D.C. No. 5:17-cv-04244-NC |
| ABBOTT LABORATORIES; ABBOTT LABORATORIES, INC., doing business as Abbott Sales, Marketing & Distribution Co., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Northern District of California
Nathanael M. Cousins, Magistrate Judge, Presiding

Argued and Submitted June 8, 2020
San Francisco, California

Before: MILLER and HUNSAKER, Circuit Judges, and SCHILTZ,** District
Judge.

---

\*      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\*      The Honorable Patrick J. Schiltz, United States District Judge for the
District of Minnesota, sitting by designation.

Plaintiff Michael Buhl is an algorithm engineer who was employed by defendants Abbott Laboratories and Abbott Laboratories, Inc. (collectively "Abbott") from 2009 until October 2016, when Abbott terminated his employment. Buhl brought this action asserting six claims under California law, including (1) whistleblower retaliation under Cal. Lab. Code § 1102.5; (2) race and national-origin discrimination under the Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12940(a); (3) retaliation under the FEHA, Cal. Gov. Code § 12940(h); (4) discharge in violation of public policy; (5) intentional infliction of emotional distress; and (6) unlawful business practices under the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200. Buhl appeals from the district court's grant of Abbott's motion for summary judgment on all of his claims. Having reviewed the grant of summary judgment de novo, *see Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 432 (9th Cir. 2018), we affirm.

We agree with the district court that Buhl failed to establish a prima facie case of discrimination on the basis of race or national origin because he failed to offer any evidence of "circumstances that suggest a discriminatory motive." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1242 (9th Cir. 2013). Buhl alleges that his manager favored Chinese employees over white employees. In support of that allegation, Buhl relies mainly on evidence that the employees who

2

were supervised by his manager were disproportionately Chinese, that only Chinese candidates were considered by his manager for an open contract position, and that his manager referred to his group of employees as "my guys." Given the small numbers involved, the probative value of the hiring evidence is minimal. *Sengupta v. Morrison-Knudsen Co.*, 804 F.2d 1072, 1076 (9th Cir. 1986) (statistical evidence derived from an extremely small sample size is of little value); *see also Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 663 (9th Cir. 2002) (evidence that three of four laid-off employees were white "presents no stark pattern, nor does it account for possible nondiscriminatory variables, such as job performance"). Setting that aside, the record reflects that all but one of the candidates for both the permanent and contract positions came either from outside staffing companies or from Abbott's human-resources department. Buhl offers no evidence about this pool of candidates, which means that he cannot show that his manager was responsible for the alleged racial imbalance. Finally, the phrase "my guys" "lead[s] to no reasonable inference of discrimination," especially given that Buhl's manager had long worked with the employees to whom he was referring. *Pottenger v. Potlach Corp.*, 329 F.3d 740, 747 (9th Cir. 2003).

We also agree with the district court that, with respect to his discrimination and retaliation claims, Buhl has failed to raise a genuine issue of material fact as to

3

pretext.  *See Brown v. City of Tucson*, 336 F.3d 1181, 1188 (9th Cir. 2003) ("circumstantial evidence of pretext must be specific and substantial in order to survive summary judgment") (cleaned up).  The record is replete with evidence of Buhl's misconduct and performance issues.  Although Buhl attempts to explain away this evidence, he has not identified any similarly situated employee who was treated more favorably, and he has not offered any other evidence from which a jury could find that Abbott's dissatisfaction with his conduct and performance—dissatisfaction that was expressed by multiple managers on multiple occasions over multiple months—was feigned.  *See Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 746 (9th Cir. 2011) (it is insufficient to show that the employer's decision was "wrong, mistaken, or unwise") (citation and quotation marks omitted).  Buhl's technical disagreements with his manager and his own subjective belief that Abbott's concerns about his performance were overblown are insufficient to raise a genuine issue of fact.  *Cf. Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) ("an employee's subjective personal judgments of her competence alone do not raise a genuine issue of material fact").

Buhl points to evidence that, the day after he made one of his whistleblower complaints, two senior managers supported a review for his termination.  Such a

close temporal connection would ordinarily be sufficient to establish pretext, but in this case the undisputed evidence shows that Buhl's performance problems and misconduct long predated the particular whistleblower complaint and that Buhl had already been warned that further misconduct could subject him to termination. In the same email in which he made his (protected) whistleblower complaint, Buhl engaged in precisely the type of misconduct that he had been warned not to repeat—namely, broadcasting his (unprotected) technical disputes with his manager to a large audience outside of his department. Buhl cannot insulate himself from being disciplined for unprotected misconduct by pairing that misconduct with protected whistleblowing. *Cf. O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 763 (9th Cir. 1996) (an employee's conduct is protected activity under Title VII and the ADEA "only if it is reasonable in view of the employer's interest in maintaining a harmonious and efficient operation") (citation and quotation marks omitted). Finally, Buhl was not terminated until three months after engaging in this protected conduct. In the interim, Abbott provided him with a memorandum that explained in detail its concerns with his performance, its expectations going forward, and the consequences he would face if he failed to meet those expectations. Under these circumstances, the temporal connection between Buhl's whistleblower complaint and the senior managers'

5

support for termination is insufficient to establish a genuine issue of material fact as to pretext.

We affirm summary judgment as to Buhl's remaining claims, which are derivative of his discrimination and retaliation claims. Buhl's remaining arguments concerning the scope of discovery and the availability of punitive damages are moot. Finally, as this disposition contains no discussion of confidential matters, we deny Abbott's motion to seal portions of it as moot.

**AFFIRMED.**