Filed 2/4/16  Lomeli v. Costco Wholesale Corp. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| FRANCINE LOMELI, | D067028 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2011-00078468-CU-PO-CTL) |
| COSTCO WHOLESALE CORPORATION, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard E.L. Strauss, Judge.  Affirmed.

Law Office of Jorge I. Hernandez and Jorge I. Hernandez; Simpson Law Group and Sean Simpson, Jayme Simpson for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Tara Wilcox, Matthew S. McConnell for Defendant and Respondent.

Plaintiff and appellant Francine Lomeli appeals from a summary judgment in favor of her former employer, defendant and respondent Costco Wholesale Corporation (Costco), on Lomeli's operative complaint alleging a remaining cause of action for

intentional infliction of emotional distress. In granting summary judgment, the trial court ruled Costco met its burden to show Lomeli's emotional distress cause of action was barred by the exclusivity provisions of the Worker's Compensation Act, that Costco's conduct was not outrageous, and it did not intend to cause Lomeli emotional distress. Lomeli contends the trial court erred in its ruling, seemingly because Costco failed to prove there were no triable issues concerning the material facts as the trial court had characterized them in a prior demurrer ruling. We conclude summary judgment was properly granted, and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND[1]

In August 2010, Lomeli, a Costco employee, worked in Costco's Chula Vista food court and was assigned operator No. 100 to track her use of the cash register. Jason Martin, an assistant general manager, oversaw the food court as part of his duties. In early August 2010, Martin informed Costco Loss Prevention Agent Tony Hamilton that

---

[1] We state the undisputed facts from the parties' separate statements submitted in support and in opposition of Costco's motion, and state other facts in the light most favorable to Lomeli, as the party opposing the motion, resolving evidentiary doubts and ambiguities in her favor. (*Elk Hills Power, LLC v. Board of Education* (2013) 57 Cal.4th 593, 606.) We grant Costco's unopposed motion to augment the record with its evidentiary objections, its lodged evidence in support of its summary judgment motion, and its reply to Lomeli's response to its separate statement of disputed and undisputed material facts. To the extent Lomeli's summary judgment opposition evidence contradicts her prior discovery responses, her discovery responses control. The rule is well settled that " '[a] party cannot create an issue of fact by a declaration which contradicts his prior [discovery responses].' " (*Benavidez v. San Jose Police Dept.* (1999) 71 Cal.App.4th 853, 860.) When trying to determine if any triable issues exist for summary judgment purposes, the trial court can " 'give great weight to admissions made in deposition and disregard contradictory and self-serving affidavits of the party.' " (*Ibid.*)

2

the food court was experiencing "shrink," that is, a shortage typically due to mistake or theft. Hamilton installed a hidden surveillance camera that filmed the customers at the Chula Vista food court windows. He reviewed a transaction summary log report that reflected an August 13, 2010 transaction in which operator No. 100 appeared to ring up three pizzas, immediately voided them out, then rung up a hot dog and a soda for the next customer at the window. Hamilton was aware that an indicator of possible theft was a transaction in which an item was rung up then voided out and replaced by a less expensive item.[2] Hamilton did not know, and never learned, that Lomeli was operator No. 100. He reported his findings to Martin on August 15, 2010, and had no further involvement in the matter.

Martin contacted Costco Regional Loss Prevention Manager Keith Paget and asked him to come to the Chula Vista warehouse to further look into Hamilton's findings. Paget reviewed video from the food court and the transaction summary log report, but could not reconcile the transactions. He had Martin pull a sales audit report showing August 13, 2010 transactions for operator No. 100. However, Paget and Martin

---

[2] Lomeli purports to dispute this fact, and many others, with citations to her own declaration that do not directly address or rebut the facts stated by Costco. She also purports to dispute facts with arguments without supporting citations to evidence, or argumentative statements not based on the evidence. Lomeli lodged deposition excerpts in opposition to Costco's motion, and referred to them in her opposing separate statement but those excerpts are not contained in the appellate record. In section II, *post*, we reject Lomeli's further attempts to dispute facts by reference to the prior demurrer ruling of Superior Court Judge Gonzalo Curiel. Though we are obligated to liberally construe Lomeli's evidence, we do not accept Lomeli's assertions that are unresponsive or without evidentiary support.

3

mistakenly looked for a sale price of $29.85 rather than $32.46, as Paget did not realize that the sales audit report totals included tax. Paget did not view other documents that would have shown the customer purchased the items. Because of the discrepancy in the video and transaction summary log report, Paget decided to bring Lomeli in for an interview to see if she could give an explanation about what had happened.

On August 16, 2015, Lomeli attended a meeting in the manager's office at the Chula Vista Costco with Paget, Martin and loss prevention employee Denisse Villagrana (Denisse Peirce, at the time of summary judgment). Before that meeting Lomeli had never met Paget and never had any problems with him or Martin. Paget sat between Lomeli and the closed door to the office. During the meeting, Lomeli was asked about the food court cash register transaction that occurred on August 13, 2010, which was described to her, and she was told there was a surveillance camera that appeared to show that she charged a customer for three pizzas, but only rang up a hot dog and soda, and that Lomeli may have kept the money for the pizzas. She was asked to explain and responded that she could not remember what had happened, but that she did not need to steal money. Lomeli repeatedly said that it could not have been her. She was uncomfortable and scared, but she was not physically threatened, and she never asked to leave or was restrained from leaving during the meeting. Paget repeatedly told Lomeli that if she did not tell the truth, the authorities would get involved. At one point, Lomeli suggested that a customer paid for the pizzas with cash at the nearby ATM machine. Paget asked Lomeli to write a statement, which Lomeli did in her own writing and choice of words without time pressure. At the meeting's conclusion, Lomeli was informed she

4

was being suspended for three days pending further investigation. She was asked to return to her scheduled shift on August 21, 2010.

Paget asked loss prevention agent Mike Weaver to come to the Chula Vista warehouse to look at video from inside the warehouse to see if the customer had used the warehouse ATM as Lomeli suggested. Weaver found video of the customer getting cash from the ATM from inside the warehouse, and the camera appeared to show the member giving money to the cashier on his second visit to the food court window. Weaver informed Paget of his findings on August 17, 2010. Martin left a message for Lomeli that day, then asked the food court manager to try to contact her to tell her that Costco had discovered that the customer had in fact paid for the pizzas. The manager informed Lomeli that she had been cleared of wrongdoing and that her suspension was lifted. Lomeli admitted that the manager did not say or do anything improper during that call.

On August 20, 2010, Lomeli returned to the warehouse, where Paget apologized to her in person. He explained that her suspension and counseling notice had been rescinded and she would be paid for her time off. Lomeli announced that she had decided to resign from employment effective immediately.

Lomeli sued Costco and Paget for damages, alleging causes of action, among others, for defamation, false imprisonment, intentional infliction of emotional distress, and violations of the unfair competition law (UCL). She alleged in part that during the August 16 meeting with Paget, Paget told her she was caught giving a man food without receiving money, that she vehemently denied the accusation and felt trapped and confined by the physical presence of two men blocking the door. She alleged that for two

5

hours, Paget attempted to solicit a confession from her and repeatedly told her that if she did not admit to stealing, the police would arrest her for theft. Lomeli alleged that Paget demanded she write a statement but when he saw she was not writing a confession, he began to tell her what to write and said if she cooperated, she would not go to jail. According to Lomeli's allegations, she was distressed and traumatized, suffered severe anxiety such that she could not sleep, and two days later was diagnosed with an acute stress reaction and anxiety disorder.

Costco removed the complaint to federal court, where the district court dismissed some claims and remanded Lomeli's claims for intentional infliction of emotional distress and violations of the UCL to superior court. Back in the superior court, Costco demurred to the complaint and also to Lomeli's first amended complaint, which contained the same allegations in support of her emotional distress cause of action. The trial court, Judge Curiel, overruled Costco's demurrer to Lomeli's emotional distress cause of action. Referencing paragraph Nos. 13 through 32 of Lomeli's operative pleading, Judge Curiel ruled the cause of action was "premised on conduct that is not part of the normal employment relationship and that is allegedly extreme and outrageous—a two hour interrogation and threatened incarceration over the theft of a small sum of money that plaintiff denied in a small room in which the only door was blocked." Following Costco's demurrers, Lomeli was left only with her cause of action against Costco for intentional infliction of emotional distress.

Costco moved for summary judgment or alternatively summary adjudication of Lomeli's emotional distress cause of action, as well as her claim for punitive damages. In

6

part, it argued Lomeli's claim was barred by the Workers' Compensation Act, and further, she could not prove Costco either engaged in extreme and outrageous conduct or intended to cause her severe emotional distress. Costco submitted declarations from Hamilton and Paget, as well as the food court manager who had called Lomeli after the meeting. Lomeli opposed the motion, submitting her own declaration, as well as that of Gloria Fausto, a person who claimed to be "in the Loss Prevention/Asset Protection industry . . . ." Fausto purported to give an opinion concerning industry standards relevant to Costco's interview techniques with Lomeli.

In reply, Costco objected on various grounds to Lomeli's evidence. In particular, it objected to portions of Lomeli's declaration in part on grounds it was contradicted by her sworn deposition testimony. It also objected to Fausto's declaration in its entirety on grounds it lacked personal knowledge, foundation, or evidentiary support; was based on speculation and conclusions; and was irrelevant, impermissible hearsay and improper expert opinion.

Sustaining some of Costco's evidentiary objections, including to Fausto's entire declaration,[3] the trial court granted summary judgment. It ruled Costco met its burden to show Lomeli's claim was barred by the Workers' Compensation Act in that her interview

---

3　　Lomeli does not challenge the trial court's evidentiary rulings or attempt to demonstrate it abused its discretion in those rulings. (See *Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 122 [applying abuse of discretion standard to court's final rulings on evidentiary objections on a motion for summary judgment].) We therefore disregard Fausto's declaration in our review, as well as the other evidence excluded by the trial court. (Code Civ. Proc., § 437c, subd. (c) [court shall consider all evidence set forth in

7

concerned a suspected theft during work hours, which stemmed from her employment relationship with Costco and did not implicate any fundamental public policy. The court additionally ruled the evidence established that Costco's conduct was neither extreme and outrageous, nor intended to cause Lomeli emotional distress.

Lomeli appeals from the ensuing judgment in Costco's favor.

DISCUSSION

I. *Summary Judgment Principles and Standard of Review*

A defendant is entitled to summary judgment " 'only if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [Citation.] To determine whether triable issues of fact do exist, we independently review the record that was before the trial court when it ruled on defendants' motion. [Citations.] In so doing, we view the evidence in the light most favorable to plaintiffs as the losing parties, resolving evidentiary doubts and ambiguities in their favor.' " (*Elk Hills Power, LLC v. Board of Equalization*, *supra*, 57 Cal.4th at pp. 605-606; see also *Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618 [review is de novo].) This court "consider[s] all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained. [Citation.] Under California's traditional rules, we determine with respect to each cause of action whether the defendant seeking summary judgment has conclusively negated a necessary element of the plaintiff's case, or has demonstrated that under no hypothesis is

summary judgment papers except that to which objections have been made and sustained].)

8

there a material issue of fact that requires the process of trial, such that the defendant is entitled to judgment as a matter of law." (*Guz v. Bechtel National Inc.* (2000) 24 Cal.4th 317, 334-335.)

## II. *Effect of Prior Demurrer Ruling*

In a threshold argument, Lomeli contends the trial court erred by granting summary judgment on her emotional distress claim because it disregarded Judge Curiel's prior demurrer ruling. Specifically, she contends the court made its decision "without foreclosing the facts articulated in the previous rulings by [Judge Curiel]"; that Judge Curiel's prior demurrer ruling "provide[d] mandatory guidance" and set forth "facts that must be considered and precluded by [Costco] to prove there are no genuine issues of material fact." Lomeli maintains that because Costco "failed to address the specific facts articulated by Judge Curiel's ruling," summary judgment was improperly granted. She repeats this argument in connection with her contentions concerning workers' compensation exclusivity, and the evidence supporting the elements of a claim for intentional infliction of emotional distress.

Lomeli's claim of error is made without cogent legal analysis or citation to authority (see Cal. Rules of Court, rule 8.204(a)(1)(B), (C)), and thus we may treat it as waived or abandoned. (*Sims v. Department of Corrections & Rehabilitation* (2013) 216 Cal.App.4th 1059, 1081; *Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1119-1120.) "An appellate court is not required to consider alleged errors where the appellant merely complains of them without pertinent argument." (*Strutt v. Ontario Sav. & Loan Assn.* (1972) 28 Cal.App.3d 866, 873.)

The argument is meritless in any event, as Judge Curiel's prior demurrer ruling concerned the pleadings and "is not binding on subsequent summary judgment motions." (*Aerojet-General Corp. v. Commercial Union Ins. Costco.* (2007) 155 Cal.App.4th 132, 139; see also *Doe v. California Lutheran High School Ass'n* (2009) 170 Cal.App.4th 828, 834-835 ["[P]laintiffs argue that the trial court's ruling conflicts with [a prior ruling overruling a demurrer on grounds the School was not a business enterprise under the Unruh Civil Rights Act.] . . . However, because the demurrer concerned the pleadings, whereas the motion for summary judgment concerned the evidence, the two rulings were not inconsistent"].) Costco thus had no obligation or burden to rebut the factual allegations of Lomeli's complaint as Judge Curiel characterized them in his demurrer ruling.

III. *Bar of Exclusive Remedy Provisions of the Workers' Compensation Act*

The workers' compensation statutes (Lab. Code, § 3200 et seq.) provide the full remedy, "in lieu of any other liability whatsoever," for injuries "arising out of and in the course of . . . employment." (Lab. Code, § 3600, subd. (a).) Thus, "[a]n employer's intentional misconduct in connection with actions that are a normal part of the employment relationship, such as demotions and criticism of work practices, resulting in emotional injury is considered to be encompassed within the compensation bargain, even if the misconduct could be characterized as 'manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance.' [Citation.] Workers' compensation ordinarily provides the exclusive remedy for such an injury." (*Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 367; see also *Miklosy v. Regents of University of*

10

*California* (2008) 44 Cal.4th 876, 902; *Livitsanos v. Superior Court* (1992) 2 Cal.4th 744, 747.)

Where an employer "steps out of its ' "proper role" ' as an employer" or engages in "conduct of ' "questionable relationship to the employment," ' " however, that conduct "is not encompassed within the compensation bargain and is not subject to the exclusivity rule." (*Singh v. Southland Stone, U.S.A., Inc.*, *supra*, 186 Cal.App.4th at p. 367.) Likewise, the exclusivity provisions of the workers' compensation law will not preempt claims for intentional or negligent infliction of emotional distress if the defendant's conduct violates a fundamental public policy. (See *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 15, 23 [injury resulting from wrongful termination in violation of a whistle-blower protection statutes "lies well outside the compensation bargain"]; *Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1101 [" 'compensation bargain' cannot encompass conduct, such as sexual or racial discrimination, 'obnoxious to the interests of the state and contrary to public policy and sound morality' "].)

Lomeli contends the workers' compensation act does not preempt her emotional distress claim. She maintains she felt trapped during her interrogation because the door was closed with individuals between her and the door. Lomeli argues her injuries stemmed from the way the interrogation was conducted; that she "is basing her complaint on the abhorrent conduct of the employer in detaining her, threatening her with arrest in an enclosed room with three other people for over two hours over an issue involving $31.48." She asserts Costco "attempted to deceive her by saying she was caught taking money on camera." She argues "[i]t is clear that the interrogation was a 'witch hunt' with

11

no factual basis for the accusation." According to Lomeli, her claims are not associated with any reasonable expectation of her employment bargain because Costco violated public policy, namely, the explicit right to privacy set forth in article I, section 1 of the California Constitution. (Cal. Const., art. 1, § 1 ["All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy"]; see *County of Los Angeles v. Los Angeles County Employee Relations Com.* (2013) 56 Cal.4th 905, 926.)[4]

There are several fatal deficiencies in these arguments, as Costco points out. Lomeli's specific factual assertions set forth above, as well as her opening brief's factual summary of the manner of her interrogation including Paget's asserted threat of incarceration, are supported only by citations to her original and first amended complaint's allegations. Lomeli's citation to her own pleading is irrelevant, as it is "fundamental that to defeat summary judgment a plaintiff must show 'specific facts' and cannot rely on allegations of the complaint" (*Roman v. BRE Properties, Inc.* (2015) 237

---

[4]     Lomeli does not claim she was subject to discrimination, which would put her outside the compensation bargain. (Compare, *Murray v. Oceanside Unified School Dist.* (2000) 79 Cal.App.4th 1338, 1363 ["where a plaintiff can allege that she suffered emotional distress because of a pattern of continuing violations that were discriminatory, her cause of action for infliction of emotional distress will not be barred by the exclusivity provisions of workers' compensation laws"] & *Fretland v. County of Humboldt* (1999) 69 Cal.App.4th 1478, 1492 ["emotional distress claims are not barred by the exclusivity rule to the extent they seek emotional distress damages for the alleged work-related injury discrimination"].) Nor did she attempt to allege a cause of action for slander, which involves damage to reputation and is not within the risk of employment within the purview of the workers' compensation law. (See *Howland v. Balma* (1983) 143 Cal.App.3d 899, 904-905.)

Cal.App.4th 1040, 1054), even when the allegations are verified.  (*Bently Reserve L.P. v. Papaliolios* (2013) 218 Cal.App.4th 418, 426.)  Lomeli asserts her first amended complaint alleged Costco "purposefully intimidated" her and alleged all the required elements of intentional infliction of emotional distress, but that assertion does not suffice on appeal to demonstrate that summary judgment was improperly granted.

Further, Lomeli's factual summary includes reference to Fausto's declaration, as does her attempt to dispute the events of the August 16, 2010 meeting, when she argues she "disputed each and every [undisputed fact] with citations to Expert Testimony and depositions."  That declaration, as we have stated (footnote 2, *ante*), was excluded by the trial court in its entirety.  Thus, to the extent Lomeli bases her claim on that testimony, including the notion that Costco's interrogation was outside industry practice of acceptable interrogation techniques, we do not consider it in assessing worker's compensation exclusivity.

Finally, while Lomeli argued generally below that her claim was not preempted by the workers' compensation law, and cited to cases such as *Gantt v. Sentry Insurance*, *supra*, 1 Cal.4th 1083 for the proposition that the compensation bargain cannot encompass conduct contrary to public policy, she did not refer to the California Constitution, much less its privacy provision in article I, section 1, as the source of that public policy in her opposing summary judgment papers.  "The principles of 'theory of the trial' apply to . . . summary judgment motions" (*North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 29, disagreed with on other grounds in *San Diego Watercrafts, Inc. v. Wells Fargo Bank, N.A.* (2002) 102 Cal.App.4th 308, 315),

13

and accordingly, " '[a] party is not permitted to change his position and adopt a new and different theory on appeal.' " (*North Coast Business Park v. Nielsen Construction Co.*, at p. 29.) Thus, we do not consider her claim, as " '[i]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court.' " (*Newton v. Clemons* (2003) 110 Cal.App.4th 1, 11.) "Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider." (*JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178.)

We are left with Lomeli's assertion on appeal that her "employment was to deliver hot dogs, pizza and other food over the counter to customers" and "[h]er employment had nothing that can reasonably be associated with confinement, harassment, threats of criminal prosecution for something she did not do." She argued below that employer conduct that is intentional, or extreme and outrageous, is not preempted by the workers' compensation act. But these assertions, even if they were supported by some record evidence, are misplaced. The question at hand is whether Costco's conduct or misconduct occurred at the worksite "in the normal course of the employer-employee relationship . . . ." (*Miklosy v. Regents of University of California*, *supra*, 44 Cal.4th at p. 902.)

In this respect, accepting all of Lomeli's admitted evidence and drawing all inferences in her favor, it shows Costco undertook an inquiry into what Hamilton and Paget considered to be a possible theft based on a flawed or careless investigation (i.e.,

14

making erroneous assumptions and failing to review other video or other documents that would have shown the customers paid for their food), and then during the August 16, 2010 meeting took a harsh position with Lomeli, telling her that if she did not tell the truth, the authorities would get involved.  Though Lomeli maintains she disputed Costco's version of the events that occurred at the August 16, 2010 meeting, Lomeli admitted in her deposition and was deemed to have admitted in discovery responses that neither Paget nor anyone else said or did anything improper during the meeting: no voices were raised, she was never physically threatened or prevented from leaving, and she was never touched in an improper manner.  Lomeli admitted she never tried to leave or asked to leave the meeting.

We conclude as a matter of law that Costco's worksite inquiry and investigation into possible theft was conduct inherent in, and within the normal course of, the employment relationship.  (*Miklosy v. Regents of University of California*, *supra*, 44 Cal.4th at p. 902.)  " '[R]easonable attempts to investigate employee theft, including employee interrogation, are [also] a normal part of the employment relationship' and cannot give rise to a court action against the employer."  (*Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, 821, quoting *Fermino v. Fedco, Inc.* (1994) 7 Cal.4th 701, 717.)  And "normal employer actions causing injury would not fall outside the scope of the exclusivity rule merely by attributing to the employer a sinister

intention." (*Fermino*, at p. 717.)[5] Lomeli has not demonstrated on appeal that triable issues of material facts exist as to the reasonableness of Costco's investigation or interrogation, including as to her detention within the manager's office, so as to preclude summary judgment on her intentional infliction of emotional distress cause of action. "So long as the basic conditions of compensation are otherwise satisfied [citation], and the employer's conduct neither contravenes fundamental public policy [citation] nor exceeds the risks inherent in the employment relationship [citation], an employee's emotional distress injuries are subsumed under the exclusive remedy provisions of workers' compensation." (*Livitsanos v. Superior Court*, *supra*, 2 Cal.4th at p. 754; see also *Jones v. Department of Corrections and Rehabilitation* (2007) 152 Cal.App.4th 1367, 1382.)

---

[5] Lomeli does not discuss *Fermino v. Fedco, Inc.*, *supra*, 7 Cal.4th 701. In that case, an employee was suspected of stealing jewelry from her employer. She was called into the manager's office where she was interrogated by the personnel manager, the loss prevention manager, and two security agents. (*Id*. at p. 707.) One of the agents told her two individuals who had witnessed her stealing were waiting in the next room, and he demanded that she confess. (*Ibid*.) She was told that each time she denied her guilt she would be assessed a point, and once she reached 14 points she would be turned over to the police. (*Ibid*.) The clerk proceeded to repeatedly and vehemently deny the theft, during which the loss prevention manager gave her "points," hurled profanities, and continued to demand she confess. (*Ibid*.) The clerk's requests to leave the room and call her mother were denied, and she was physically compelled to remain in the room for more than one hour. (*Ibid*.) When she rose and attempted to leave the security guards slid in front of the door and gestured at her to stop. She finally broke down in tears and confessed, but the interrogators admitted that there was no one waiting and they believed she was innocent. (*Ibid*.) The court held that an employer's false imprisonment of an employee is always outside the scope of the compensation bargain, and that the plaintiff in that case had stated a cause of action for false imprisonment. (*Id*. at pp. 723, 724.) Here, plaintiff's deposition admissions demonstrate that Costco did not intentionally confine Lomeli against her will, and she was not subject to the same type of physical restraint as the plaintiff in *Fermino*.

16

Lomeli's position otherwise was squarely rejected by the California Supreme Court in *Livitsanos*, when it explained that "the proposition that intentional or egregious employer conduct is *necessarily* outside the scope of the workers' compensation scheme is erroneous. This was the precise problem which we addressed in *Cole* [*v. Fair Oaks Fire Protection Dist.* (1987)] 43 Cal.3d 148, where we noted that many intentional acts by an employer could be expected to cause emotional distress and yet do not lie outside the proper scope of workers' compensation. Even intentional 'misconduct' may constitute a 'normal part of the employment relationship.' [Citation.] As we subsequently observed in *Shoemaker v. Myers*, *supra*, 52 Cal.3d 1, 'Even if such conduct may be characterized as intentional, unfair or outrageous, it is nevertheless covered by the workers' compensation exclusivity provisions.' " (*Livitsanos v. Superior Court*, 2 Cal.4th at p. 752, italics added.)

Our conclusion ends the summary judgment inquiry on Lomeli's sole cause of action for intentional infliction of emotional distress. Because there are no triable issues of fact as to Lomeli's substantive cause of action, her claim for punitive damages also fails. (See *Coleman v. Gulf Ins. Group* (1986) 41 Cal.3d 782, 789, fn. 2; accord, *Caira v. Offner* (2005) 126 Cal.App.4th 12, 39, fn. 20 [punitive damages are ancillary to a valid cause of action].)[6]

---

6    Were we to address Costco's motion as to the required element of extreme and outrageous conduct (see *Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050), we would likewise conclude summary judgment was properly granted. "A defendant's conduct is 'outrageous' when it is so ' " 'extreme as to exceed all bounds of that usually tolerated in a civilized community.' " ' " (*Id*. at pp. 1050-1051.) Costco's investigation and questioning

17

DISPOSITION

The judgment is affirmed.  The parties shall bear their own costs on appeal.


O'ROURKE, J.

WE CONCUR:


BENKE, Acting P. J.


McDONALD, J.

---

of Lomeli constitutes personnel management, which, even if improperly motivated, is "not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society."  (*Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 80.)